[Crim. No. 6108. First Dist., Div. Four. July 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE
CONIOUS HOGAN, Defendant and Appellant.

Leon Goldin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien, William D. Stein, John T. Murphy and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

RATTIGAN, J.—This appeal is before us for the second time. Contrary to our previous disposition, we reverse the judgment of defendant's conviction upon the ground that the admission of evidence at his trial, involving his identification by an eyewitness in the courtroom and at a previous police lineup, denied him due process of law.

Defendant was charged by information with burglary (Pen. Code, § 459), and with two prior felony convictions. He admitted the priors. A jury found him guilty of the burglary as charged.

The burglary in question occurred when the apartment of Carl Caldwell was entered on the morning of September 16, 1964, while Mr. Caldwell was absent at work. A television set was stolen. The only door to the apartment, which was located over a garage, was at the head of an outside stairway on the building.

The principal prosecution witness at the trial was Quincy Thomas, Mr. Caldwell's next door neighbor. Mr. Thomas testified that on the day of the burglary he saw a male Negro carrying a television set down the stairway from the Caldwell apartment. The man walked to the street in front of the premises and disappeared over a hill, on foot and still carrying the television set. After a few minutes, Thomas saw the man return on foot without the television set, enter an automobile which had been parked in front of the building where Caldwell lived, and drive away. At this point, Thomas jotted the automobile's description on a card he had in his pocket. Thomas gave the description to the police on the following day, and told them that he could identify the burglar.

Testifying to the events of September 16 at the trial, Thomas stated that the man he had seen was not wearing a sweater, and that his pants were dark in color. It was shown

that he had testified at defendant's preliminary examination that the man was wearing a sweater, and that the witness could not then recall whether the pants were light-colored or dark. At the trial, however, Thomas positively identified defendant, in the courtroom, as the man he had seen leave the Caldwell apartment.

Defendant is a Negro. He was arrested on December 29, 1964, three and one-half months after the Caldwell burglary. Shortly thereafter, Quincy Thomas identified him at a police lineup as the burglar. The prosecution had Thomas testify to the lineup identification, but offered no evidence concerning the circumstances under which the lineup had been conducted. Thomas, describing the lineup at the trial, testified that four men were exhibited to him together and that he immediately selected defendant as the burglar. Defendant was the only Negro in the lineup: of the others, one was a "Mexican man" and two were white.[1]

The card upon which Thomas had noted the burglary car's description on September 16 was received in evidence at the trial. He had written that the car was a 1957 Pontiac, two-tone green in color, with license number PSV 719. Sergeant Calvert, a police officer, testified without objection—and without specifics—that he had conducted an investigation of a California license number PSV 719, and that the investigation had led him to the name "George Hall."

Officer Mack testified that it was he who arrested defendant on December 29, 1964. At the time, a two-tone green Pontiac, license number PSV 719, was parked in front of the residence where defendant was arrested. Officer Mack further testified that, during defendant's interrogation which followed at a police station, Sergeant Calvert showed defendant a "blown-up photograph of a driver's license," and that defendant admitted that the picture on it "does look like me." The photograph was received in evidence without objection. Ac-

---

[1] Only Thomas testified concerning the lineup. He said that a police officer who was present did not point out defendant to him, and that he —Thomas—picked out the burglar "from his features." The witness was present at the lineup "not too long, I don't recall how long but not over ten minutes." He "casually" looked at all of the four men on display, but picked out defendant "right off." No evidence was received at the trial concerning defendant's specific coloring or his features, as contrasted with those of any of the other three men. Such element of contrast appears, however, because Thomas unmistakably recognized—and recalled in his testimony—that one of the men was a "Mexican man," that two others were "white," and that defendant was the only Negro in the lineup.

cording to the driver's license depicted on it, the person licensed was "George Hall."

Defendant presented an alibi defense. He called two witnesses who testified that they had been with him almost all day on September 16, at a place seven or eight miles from the scene of the Caldwell burglary. According to these witnesses, the three spent the day working on an automobile owned by one of them, and defendant had not left the witnesses' presence at any time. Testifying in his own behalf, defendant joined in his witnesses' story concerning his whereabouts on September 16. He denied burglarizing the Caldwell apartment, or being in its vicinity on that day. He admitted that a woman with whom he had been living, and at whose home he was arrested, owned a green Pontiac which he had driven on occasion, but he denied driving it on the day of the burglary.

Upon his original appeal, defendant asserted constitutional error in the admission of the testimony of Quincy Thomas that the latter had previously identified defendant, at the police lineup, as the burglar of the Caldwell apartment. Defendant invoked the Fifth, Sixth and Fourteenth Amendments to the United States Constitution (and sections 8 and 13 of article I of the Constitution of California) in this regard, but principally contended that the testimony violated his right to counsel as guaranteed by the Sixth Amendment.

After defendant had raised these arguments, and while his appeal was still pending in its first phase, his Sixth Amendment point was squarely upheld by the United States Supreme Court. Where a pretrial lineup or other confrontation is conducted for the purpose of having or permitting an eyewitness to a crime to identify the accused as the person who committed it, the right of the accused to the assistance of counsel at the lineup is guaranteed by the Sixth and Fourteenth Amendments. (*United States* v. *Wade* (1967) 388 U.S. 218, 236-237 [18 L.Ed.2d 1149, 1162-1163, 87 S.Ct. 1926] ; *Gilbert* v. *California* (1967) 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186, 87 S.Ct. 1951].)

 If an eyewitness has identified the accused at a lineup where this constitutional right was neither honored nor intelligently waived, an in-court identification by the same witness will be inadmissible at the trial without a showing—by "clear and convincing evidence"—that its "origin" was "independent" of the lineup. (*United States* v. *Wade, supra,* 388 U.S. 218 at pp. 236-237, 239-242 [18 L.Ed.2d 1149 at pp. 1162-1163, 1164-1166].) In the same event, evidence of the

258

lineup identification itself is wholly inadmissible under a "per se exclusionary rule." (*Gilbert* v. *California, supra*, 388 U.S. 263 at pp. 272-273 [18 L.Ed.2d 1178 at p. 1186].)

Thus, defendant's constitutional challenge of the Thomas testimony was valid under the *Gilbert* rule. But, pronouncing the *Wade-Gilbert* rules on June 13, 1967, the United States Supreme Court also held that they would apply, in other cases, only prospectively and as to police lineups conducted after that date. (*Stovall* v. *Denno* (1967) 388 U.S. 293, 296 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967].) ▮▮ ▮▮ Our Supreme Court subsequently followed *Stovall* in this respect, holding that the *Wade-Gilbert* rules would apply in California only as to lineups conducted after June 13, 1967. (*People* v. *Feggans* (1967) 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) The lineup in the present case occurred at the end of 1964. Accordingly, and although defendant's point was both timely and well taken when he first asserted it in this court, the *Wade-Gilbert* rules could not avail him.

In *Stovall*, however, the United States Supreme Court also stated that ". . . [I]t remains open to all persons to allege and prove, as Stovall attempts to do in this case, that the confrontation [i.e., in the context of the present case, the police lineup] resulted in such unfairness that it infringed his right to due process of law. See *Palmer* v. *Peyton* (4th Cir. 1966) 359 F.2d 199 . . . This is a recognized ground of attack upon a conviction independent of any right to counsel claim." (*Stovall* v. *Denno, supra*, 388 U.S. 293 at pp. 299, 302 [18 L.Ed.2d 1199 at pp. 1205, 1206].) Denied the benefit of his Sixth Amendment point because the *Wade-Gilbert* rules were not to be retroactively applied, defendant urged on his still-pending appeal[2] that the visibly interracial nature of the police lineup in this case "resulted in such unfairness" as to deprive him of due process within the meaning of *Stovall*.

Concluding the appeal in the first instance, we held adversely to defendant's due process point and affirmed his conviction. He petitioned the Supreme Court for a hearing. While his petition was pending, that court upheld a similar point in *People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336], and transferred the present case to us "for reconsideration in the light of" the *Caruso* decision. Upon

---

[2]As previously stated, the *Wade, Gilbert* and *Stovall* decisions were filed and published by the United States Supreme Court on June 13, 1967. This was two days before the present appeal was orally argued. Both parties re-briefed us by letter on defendant's surviving *Stovall* point.

the record thus revisited and reconsidered, we now conclude that *Caruso* requires reversal in this case.

■ The *Caruso* court (68 Cal.2d 183 at pp. 188-189) explicitly cited and quoted *United States* v. *Wade, supra,* in condemning "unfairly constituted lineups" as vehicles for pretrial identification of an accused by eyewitnesses to a crime. The United States Supreme Court's extensive indictment of such lineups in the *Wade* decision unmistakably reached and included the procedure followed by the police in the present case. The *Wade* court stated (388 U.S. 218 at pp. 232-233 [18 L.Ed.2d 1149 at pp. 1160-1161]) :

"What facts have been disclosed in specific cases about the conduct of pretrial confrontations for indentification illustrate both the potential for substantial prejudice to the accused at that stage and the need for its revelation at trial. A commentator provides some striking examples:

" 'In a Canadian case . . . the defendant had been picked out of a line-up of six men, of which he was the only Oriental. In other cases, a black-haired suspect was placed among a group of light-haired persons, tall suspects have been made to stand with short non-suspects, and, in a case where the perpetrator of the crime was known to be a youth, a suspect under twenty was placed in a line-up with five other persons, all of whom were forty or over.' (Footnote citation.)

"Similarly state reports, in the course of describing prior identifications admitted as evidence of guilt, reveal numerous instances of suggestive procedures, for example, that . . . the other participants in a lineup were grossly dissimilar in appearance to the suspect . . . (Footnoted citation.) "

Applying to the *Caruso* lineup the visual-contrast standard of "unfairness" as thus defined in *Wade,* our Supreme Court stated: "We can only conclude that the lineup was 'unnecessarily suggestive and conducive to irreparable mistaken identification' (*Stovall* v. *Denno* (1967) *supra,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206]), and we hold that its grossly unfair makeup deprived defendant of due process of law. (*Stovall* v. *Denno, supra.*) " (*People* v. *Caruso, supra,* 68 Cal.2d 183 at p. 188.) The same standard requires the same conclusion here.

Caruso was a big man, with a dark complexion and dark wavy hair. The eyewitnesses remembered that the robber had these characteristics. None of his four companions in the line-up was his size, none was dark-complected, none had dark wavy hair. (*People* v. *Caruso, supra,* 68 Cal.2d 183 at pp.

187-188.) In the present case, Quincy Thomas had seen a Negro commit the burglary. Defendant was a Negro: the three men lined up with him for confrontation by Thomas were not, and this fact was immediately evident to Thomas. The *Caruso* court noted that the eyewitnesses had recalled the robber's conspicuous physical characteristics, and that ''if they were to choose anyone in the lineup, defendant was singularly marked for identification.' (*Id.*, at p. 187.) The contrasting composition of defendant's lineup was indistinguishable from that of Caruso's.

*Caruso* is similar to this case in other respects. The eyewitnesses who identified Caruso were uncertain concerning the clothing worn by the robber. (*People* v. *Caruso, supra,* 68 Cal.2d 183 at p. 185.) As has been shown, Quincy Thomas was uncertain concerning the burglar's clothing. As the *Caruso* court pointed out (*id.*, at p. 188), the in-court identification of Caruso persuaded the jury to disregard his alibi defense. The jury acted similarly here, and for the same reason. There was no evidence in *Caruso* which associated the accused with the property stolen in the robbery. Similarly, the TV set stolen in the burglary here was not produced or referred to at defendant's trial, nor was he otherwise associated with it in any respect.

In *Caruso* and here as well, there was evidence connecting the accused with the crime through an automobile. Caruso's car was seen in the vicinity of the robbery, and its license number was reported. (*People* v. *Caruso, supra,* 68 Cal.2d 183 at pp. 185-186.) In the present case, the description of the burglary car as noted and reported by Thomas matched that of an automobile which was apparently accessible to defendant and which was nearby when he was arrested.

This evidence is somewhat more substantial than its *Caruso* counterpart: Thomas testified that he saw both the car and defendant driving it, whereas the witness who saw Caruso's car near the robbery did not identify him as its driver. However, and as in *Caruso,* the eyewitness identification putting defendant at the scene of the crime (and putting him in the car at the same place) remains the essential feature of the People's case. Without it, as in *Caruso,* the evidence otherwise associating the accused with the automobile would not be sufficiently substantial to support his conviction.

The Attorney General, rebriefing us in the appeal's current phase, attempts to distinguish *Caruso* on several grounds. Quoting both *Caruso* and *Wade* on the danger of mistaken

identification where "the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest" (*People* v. *Caruso, supra,* 68 Cal.2d 183 at p. 188), he points out that, while the *Caruso* witnesses' opportunity to observe the robber was "insubstantial" (because they saw him only fleetingly), Mr. Thomas observed the burglar deliberately and at close range at the scene of the crime.

On the other hand, however, the *Caruso* witnesses selected the accused from a lineup within 24 hours after they had seen the robber. Mr. Thomas did not identify defendant until a lineup conducted more than three months after the burglary. That he had a more substantial opportunity to observe the culprit (than did the eyewitnesses in *Caruso*) is thus counterweighted by the fact that his visual recollections were substantially less current when he invoked them at the lineup.

The Attorney General also points out that in *Caruso* the Supreme Court found that "Other circumstances, moreover, lent credence to the defense." (68 Cal.2d 183 at p. 189.) The "other circumstances" included the facts that Caruso had no apparent motive for the robbery because he was gainfully employed and was not in financial straits, and that he had no prior criminal record. The Attorney General urges that *Caruso* is thus distinguishable because of the evidence in this case of "the driver's license issued in a fictitious name, the registration of the vehicle used by the burglar in that same name, appellant's unemployment during the month of the burglary, and his two prior felony convictions."

These attempted distinctions must also fail. The circumstances shown in the record concerning the "George Hall" driver's license are suspicious but inconclusive. There is no evidence that the license was issued in a "fictitious name." Defendant admitted to the police that the person photographed on the license resembled himself, but there is no evidence that the license had been issued to him or that he had it in possession. The fact of his current unemployment does not support an inference that he was criminally motivated where Caruso was not; his prior felony convictions do not strip his defense of "credence"; and none of the circumstances mentioned would operate in any event to cure the constitutional defects in the evidence which identified him as the burglar.

In substance, the Attorney General's arguments upon reconsideration embrace many of the same factors which impelled us to reject defendant's due process contentions in

the first instance. This being so, the definitive answer is that, viewed in the light of *Caruso,* our reasoning was wrong then and the arguments which reflect it are wrong now. Defendant "has made a showing that the lineup was unfair, resulting in tainted in-court identification essential to the People's case. The People fail to demonstrate that the error was harmless (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824]), and the judgment must therefore be reversed." (*People* v. *Caruso, supra,* 68 Cal.2d 183 at p. 184.)

If the People choose to try defendant again, the evidence that Quincy Thomas identified him at the constitutionally defective police lineup will be inadmissible as part of the prosecution's case. (*Gilbert* v. *California, supra,* 388 U.S. 263 at pp. 272-273 [18 L.Ed.2d 1178 at pp. 1186-1187, 87 S.Ct. 1951].) An in-court identification by the same witness will also be inadmissible unless, upon *voir dire,* the People show "by clear and convincing evidence" that it is based upon the witness's observations of the accused at the scene of the burglary (*United States* v. *Wade, supra,* 388 U.S. 218 at pp. 239-240 [18 L.Ed.2d 1149 at pp. 1164-1165, 87 S.Ct. 1926]) : and the showing to be made must meet the "requisite level of proof" which the *Caruso* court has specified in detail. (*People* v. *Caruso, supra,* 68 Cal.2d 183 at pp. 190-191.)

The facts that defendant's original Sixth Amendment point was not available to him on this appeal, but that a due process point was, became apparent at a very late date during the appeal's pendency in its first phase. (See fn. 2, *supra.*) The urgency of this development imposed a difficult burden upon court-appointed counsel. He nonetheless pursued the due process point with tenacity and competence. We commend him for both.

The judgment of conviction is reversed.

Devine, P. J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 18, 1968.