[Crim. No. 3816. First Dist., Div. Two. July 17, 1961.]

THE PEOPLE, Respondent, v. RAYMOND GOSS, Appellant.

Theodore M. Rosenak, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Robert R. Granucci, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—By an information dated December 4, 1959, the defendant, Raymond Goss, was charged with alternate counts of theft, both arising from the same facts: the first for grand theft (Pen. Code, § 484) of R. D. Monte on October 28, 1959; the second for petty theft (Pen. Code, § 667) of R. D. Monte on the same day. The information also alleged prior convictions for robbery and attempted robbery which the defendant at first denied, but later admitted. He entered a plea of not guilty to both counts of the information. The jury found him guilty of grand theft as charged in the first count of the information and not guilty of petty theft as charged in the second count.

On this appeal from the judgment entered on the verdict and from the order denying his motion for a new trial, the defendant argues that the judgment of conviction must be reversed because: (1) His detention for 27 days before his arraignment violated article I, section 13, of the state Constitution as well as section 825 of the Penal Code; (2) the delay of 27 days before the arraignment and the additional delay of 56 days before the commencement of the trial denied him his right to a speedy trial guaranteed under article I, section 13 of the state Constitution; (3) the evidence does not support the judgment; and (4) the prosecution was guilty of prejudicial misconduct.

The record reveals the following facts: About 1:30 p. m. on October 28, 1959, Bessie Lekola, a grocery checker at the Lady Fair Market owned by R. D. Monte in San Jose, was waiting on two customers at the checkstand. As she started to

add up their purchases, one of them asked about the price of some candy, and then reached over and spilled a box of mints all over the counter. When Mrs. Lekola turned around, she saw the hand of a third customer [subsequently identified as the defendant] in the open cash drawer. She told him to put the money back and cried out for assistance. The defendant threw a $20 bill from his pocket at her and dashed out the door with the rest of the money in his hand followed by two employees of the market, R. Crooks, and T. Weber, who had responded to Mrs. Lekola's call for help. Crooks and Weber chased the defendant for about a block and a half. The defendant threw away two more $20 bills which were retrieved by his pursuers and finally escaped by vaulting a fence and running through a garden.

In the meantime, the two customers at the checkstand paid for their purchases [some apples and Vienna sausage] and walked out of the store after the defendant had left. Mrs. Lekola followed them outside and took down the license number of their car as they drove off. She turned the license number over to the police who subsequently discovered that the car was registered to the defendant's brother, Robert Goss, at a Vacaville address.

Later the same afternoon when Mrs. Monte, the bookkeeper, arrived at the Lady Fair Market, it was ascertained that approximately $300 in cash had been taken out of the cash drawer, of which $60 had been recovered. When the defendant arrived at his home in Vallejo, he heard that the police were looking for him. As he was on parole, he went to the police station and told two officers that he had been in Vallejo and had not been in San Jose. Later, he told two sheriff's officers and his parole officer that he had been in San Jose on the day in question, with two companions, looking for work; he admitted being in the Lady Fair Market at the time of the robbery, but denied any participation in the offense. At the trial, he testified that he and Willie Johnson and Willie Dandridge had gone to San Jose to look for work. They stopped at the Lady Fair Market to buy some Vienna sausage and apples for their lunch; while he and Dandridge were at the checkstand, Johnson suddenly took the money out of the cash register, ran out of the store and disappeared.

The defendant was arrested in Vallejo on October 29. Subsequently, he was removed to the Santa Clara County jail and confined there, pursuant to a hold order signed by his parole officer. He was identified by Mrs. Lekola, Mr. Crooks

and Mr. Weber at lineups on November 2 and 3, 1959, and arraigned on November 24, 1959. The information was filed on December 4, 1959, and the trial began on January 18, 1960.

 The first argument on appeal is that his detention for 27 days from the time of his arrest on October 29 to the time of his arraignment on November 24 was a violation of section 825 of the Penal Code and article I, section 13, of the state Constitution. Section 825 of the Penal Code provides, so far as relevant, that: "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays . . ." Article I, section 13, of the state Constitution provides, so far as relevant: "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial . . ." [see also Pen. Code, §§ 686; 849, subd. (a); and 1050].

 The basic policy underlying both the constitutional and statutory provisions is to protect the accused from having criminal charges pending against him an undue length of time (*People* v. *Godlewski,* 22 Cal.2d 677 [140 P.2d 381]).

As the record here indicates that the defendant was a parolee, the first question is whether he is entitled to the protection of the above-mentioned statute and the constitutional provision. It is clear that although on parole, the defendant was "a prisoner under sentence and in the legal custody . . . of the Department of Corrections" (*In re Marzec,* 25 Cal.2d 794, 797 [154 P.2d 873]). He was subject to the rules and regulations of the Adult Authority (Pen. Code, § 3052), and had the civil rights disabilities prescribed by section 2600 of the Penal Code (*People* v. *Denne,* 141 Cal.App.2d 499 [297 P.2d 451]). The granting of parole does not change his status as a prisoner but simply pushes back the prison walls for him, allowing him wider mobility and greater personal opportunity while serving his sentence (*People* v. *Denne, supra,* p. 508). Section 3056 of the Penal Code provides: "Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure of the prison." The only difference between the defendant's status and that of other prisoners, is that he is permitted to stay outside the prison walls, although he is still in custody (*People* v. *Contreras,* 154 Cal.App.2d 321, 325 [315 P.2d 916]; also see *In re Ferguson,* 55 Cal.2d 663, 670-671 [12 Cal.Rptr. 753, 361 P.2d 417], indicating that persons convicted of felonies and incarcerated are subject to

the exception of article X, section 7, of the state Constitution and not protected by the guarantees of article I).

In *People* v. *Aguirre,* 181 Cal.App.2d 577 [5 Cal.Rptr. 477] (which involved a prisoner at San Quentin who was found in possession of a knife) it was held that a delay of one year between the commission of the offense and the issuance of the indictment was not a violation of due process or of article I, section 13, of the state Constitution and sections 849, subdivision (a), and 1050[1] of the Penal Code. The court pointed out that a person who was already in custody could not logically be arrested, as arrest means taking a person into custody, and that the rights of a person in custody to a speedy trial were governed by section 1381 of the Penal Code (*Osmulski* v. *Superior Court,* 169 Cal.App.2d 444 [337 P.2d 520]). This section provides that where a charge is filed against a person serving a sentence in a state prison, such person must be brought to trial within 90 days after he delivers a written notice to the district attorney of his desire to be brought to trial on such charge. No such request was made in the Aguirre case and the record here does not indicate that such a request was made in the instant case.

In *People* v. *Denne, supra,* the court held that a parolee was not protected by the constitutional immunity against unreasonable searches and seizures. The court said at page 510:

". . . . It is unnecessary for a parole officer to apply for a warrant to 'arrest' a parolee who is already his prisoner and who is at all times *in custodia legis.* The administration of the parole system must be realistic, and not strangled in technical niceties. A parole officer's physical apprehension of his prisoner for suspected violation of parole is not an 'arrest' in the sense that a peace officer arrests a private individual suspected of a crime but a mere transfer of the subject from constructive custody into actual or physical custody. Having constructive custody of his prisoner at all times, there is nothing unreasonable in a parole officer's search of the prisoner's premises where, as here, he has reasonable cause to believe the parole has been breached. The Supreme Court of the United States has characterized the violation of a condition of parole as being, in legal effect, on the same plane as an escape from the custody of the prison warden. 'His status and rights were analogous to those of an escaped convict.'

[1]Then section 681a.

726

(*Anderson* v. *Corall,* 263 U.S. 193 [44 S.Ct. 43, 68 L.Ed. 247].) . . .''

 We think the same reasoning applies here, and that the detention of the defendant for a period of 27 days was not in violation of section 825 of the Penal Code or article I, section 13, of the state Constitution, as the defendant was not ''arrested'' but merely transferred from constructive custody into actual or physical custody.

 Defendant further argues that his detention was unlawful because the ''hold order'' signed by his parole officer was on a printed Solano County form for the order, but was directed to the Sheriff of Santa Clara County and requested that he hold the defendant in the Solano County jail. The trial court ruled that the order was a valid one.[2]

We think this ruling was a proper one. The evidence indicated that the Santa Clara County Sheriff's office had been instructed to hold the defendant in the Santa Clara County jail and that the error was a typographical one. The order on its face indicates that it was for a violation of section 3056 of the Penal Code. It was signed by the defendant's parole officer who was charged with supervising the defendant's conduct and had been informed that the defendant was a suspect in the robbery of the Lady Fair Market. Thus, the order disclosed on its face that it was based on the legal and proper findings of a duly authorized person (*cf. In re McLain,* 55 Cal.2d 78, 87 [9 Cal.Rptr. 824, 357 P.2d 1080]). Under these circumstances, it cannot be said that the use of the Solano County form by the defendant's parole officer was a defect which would cause the defendant's resulting detention in the Santa Clara County jail to be an unlawful one.

 Defendant next argues that he was deprived of his constitutional right to a speedy trial because of the lapse of 56 days between his arraignment on November 24 and the start of his trial on January 18. There is no merit in this argument as the defendant was not a ''party accused'' within the meaning of article I, section 13, until the filing of the information on December 4 (*People* v. *Jordan,* 45 Cal.2d 697 [290 P.2d 484]).

 The next argument is that the evidence was insufficient to sustain the judgment for grand theft because there

---

[2]The matter was properly ruled on at this point in the proceedings because at the time of earlier proceedings on the motion under section 995 of the Penal Code, the defendant's counsel had not seen a copy of the order signed by the parole officer.

was no testimony as to how the amount taken out of the cash register was determined, only the speculation of the witnesses. Mrs. Lekola testified that she did not know exactly how much cash she had in the till, but the boss told her $300 had been taken. The police officer who investigated the case testified that the amount missing was determined by a checking of the cash register tapes and that the amount in his report varied from $249 to $309 because of the $60 which had been returned. *People* v. *Simpson,* 26 Cal.App.2d 223 [79 P.2d 119], cited by the defendant, is not applicable here, as there all the evidence as to the value of the property taken was speculative. The manager of the store testified that after checking with the bookkeeper, it was determined that $303 was taken, including the $60 which was returned. Thus, it appears that all the evidence indicates that the amount taken was in excess of $200, and thus sufficient to support the finding of grand theft.

Defendant also argues, vainly, that all the evidence on the amount taken was inadmissible hearsay. However, if such evidence is received at the trial without objection, it may be considered on appeal in support of the judgment (*People* v. *Stepp,* 82 Cal.App.2d 49 [185 P.2d 417] ; *People* v. *Peterson,* 66 Cal.App.2d 420 [152 P.2d 347]). However, much evidence on the amount taken was direct evidence and not hearsay.

There is also no merit in the final argument that the prosecution was guilty of prejudicial misconduct in its cross-examination of the defendant. On direct examination, the defendant testified that he had been questioned by the police as to whether he knew Johnny Williams and denied knowing Williams. Thus, it was proper to ask him whether he had in fact been associated with Williams in an attempted robbery. Furthermore, the record reveals that defendant's counsel properly objected and the court disallowed the question and then properly instructed the jury to disregard it. It is to be presumed that the jury heeded this admonition.

Judgment of conviction and order denying motion for new trial are hereby affirmed.

Draper, J., and Shoemaker, J., concurred.