69 Cal.Rptr. 193]

[Crim. No. 396.   Fifth Dist.   June 11, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RAMON
SALCIDO, Defendant and Appellant.

2

Ramos Salcido, in pro. per., and Ben Curry, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Arnold O. Overoye, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—This appeal is from a conviction of murder, second degree, upon a retrial after defendant's successful appeal to this court (*People* v. *Salcido*, 246 Cal.App.2d 450 [54 Cal.Rptr. 820]) from a judgment of conviction of murder, first degree. The thrust of the appeal is that defendant was not retried within 60 days after the filing of the remittitur in

the trial court, as required by Penal Code section 1382, sub-division 2, although defendant also asserts a violation of his right to a speedy trial under the Sixth Amendment to the United States Constitution and section 13 of article I of the California Constitution.

The remittitur was filed January 17, 1967, and on March 17 defense counsel moved to have the case set for trial within the 60-day period specified by section 1382. Since defendant was in prison, it was nearly impossible to have him returned to Merced for trial within the 60-day period.

On March 21, 1967, after the 60 days expired, defendant moved for dismissal of the action. After a hearing, the trial judge denied the motion and set the retrial for April 11. It was tried at that time, 84 days after filing of the remittitur.

██ We find no federal question, in the light of the follow-ing exposition by the United States Supreme Court upon the implications of the language "speedy trial" as used in the Sixth Amendment: "We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many pro-cedural safeguards provided an accused, the ordinary proce-dures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' [Citation.] 'Whether delay in completing a persecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances. . . . The delay must not be purpose-ful or oppressive,' [citation] '(T)he essential ingredient is orderly expedition and not mere speed.' " (*United States* v. *Ewell*, 383 U.S. 116, 120 [15 L.Ed.2d 627, 630-631, 86 S.Ct. 773, 776].)

██ Parallel reasoning would normally impel application of the same principles to defendant's right to a speedy trial

under article I, section 13, of the California Constitution since the right is there couched in equally general terms. However, Penal Code section 1382, subdivision 2, gives definiteness to the term ''speedy trial'' by requiring trial in the superior court within 60 days after the filing of an indictment or the filing of an information, or after the filing of the remittitur following an appeal, ''unless good cause to the contrary is shown.''

Where the question is raised after trial rather than by a petition for a writ of mandate, prohibition or habeas corpus, the effect of a denial of a speedy trial is determined by the basic rules governing appeals in criminal cases. It is summarized thus in *People* v. *Wilson,* 60 Cal.2d 139, 151-152 [32 Cal.Rptr. 44, 383 P.2d 452]: ''. . , it is apparent that the denial of his right to a speedy trial—a personal right, be it remembered, which is presumed to be waived if the defendant fails to assert it in timely fashion—is no more significant than any other error in procedure before trial. It follows that as one who seeks to predicate thereon a reversal of his judgments of conviction, defendant like any other appellant must show that the error was a prejudicial one.'' (See *People* v. *Clark,* 62 Cal.2d 870, 886 [44 Cal.Rptr. 784, 402 P.2d 856]; Cal. Const. art. VI, § 13.)

The rule of *Wilson,* which follows article VI, section 13, and *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243], has not been superseded, as defendant urges, by the so-called *Chapman* test (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed. 2d 705, 87 S.Ct. 824]) unless, of course, the delay comes within the rationale of *United States* v. *Ewell, supra.* Here, the delay is well within the allowable limits of the *Ewell* case and, since there is no federal question under the Sixth Amendment, the rule of *Chapman* is not applicable.

We turn to the question whether good cause was shown for the delay of 24 days beyond the 60-day standard fixed by Penal Code section 1382. The district attorney explained that a request for a trial date was delayed because two witnesses, the only witnesses present at the time of the shooting, were agricultural laborers who had left the area. They could not be located in the small community of Firebaugh where they lived at the time of the first trial. The district attorney also satisfied the trial court that one of the witnesses had left the State of California and diligent effort was being made to locate him and return him for the second trial. As it developed, the witness was never located and when

the case went to trial 24 days later his testimony at the first trial was read to the jury pursuant to stipulation of counsel. The delay was not ''purposeful or oppressive'' (*United States* v. *Ewell, supra*) and since it was incurred in the interests of securing a fair trial, good cause was demonstrated.

Defendant urges that he was prejudiced by the delay despite the apparent good cause (*People* v. *Wilson, supra,* 60 Cal.2d at p. 151), arguing that had the case been retried earlier perhaps the missing witness might have been available and might have switched his testimony in favor of the defendant. But the record indicates that the witness was not available, so this speculation is completely untenable. It is also suggested that perhaps the witness who did testify in the second trial for some reason might have changed her version of the shooting had she testified earlier, since when first interrogated she said the victim committed suicide.

This sheer speculation does not justify a conclusion that a result more favorable to defendant would have been reached had the retrial been held within 60 days, rather than 84 days, nor does it negate the ''good cause'' shown by the district attorney for the 24-day delay. (*People* v. *Katzman,* 258 Cal. App.2d 777, 789-790 [66 Cal.Rptr. 319].)

In reviewing the record to determine the foregoing issue, we also have had in mind defendant's oblique attack upon the sufficiency of the evidence to sustain the conviction of murder, second degree, by asserting there was no proof of motive or malice. The pertinent facts are that defendant was riding in the back seat of an automobile with the victim, his girl friend, Cruz Almeras. Defendant had been living with Cruz some time before the killing occurred. Jesus Guerrero was driving the automobile; Carlotta Casteneda was a passenger in the front seat. Shortly before the shooting defendant was arguing with Cruz over another woman and whether he would take Cruz with him to Arizona. Cruz said she wanted to jump out of the car because defendant told her to get out, so Guerrero stopped the car and all four occupants got out. Defendant wanted everyone to get back in the car, but the other three demurred; defendant obtained a gun from the automobile and ordered the others into the car under threat to kill them. He fired the gun twice, and they immediately complied with his order.

Carlotta testified that the argument between defendant and Cruz continued, and two or three times she heard defendant tell Cruz, ''I am going to kill you.'' She looked back and saw

defendant pointing the gun at Cruz with the barrel 2 or 3 inches from her chest. He lowered the pistol slightly when Carlotta told him to lower it, and she again faced the front. There was a shot; Carlotta looked back and saw Cruz with her hands covering her chest and defendant still pointing the gun at her. Carlotta told Guerrero ''He killed her.'' Defendant wiped the gun with his handkerchief and told Carlotta and Guerrero to say that Cruz killed herself.

The gun, owned by defendant, was found under the front seat immediately in front of where he had been sitting at the time the shot was fired. Defendant did not take the stand.

In connection with his argument as to the insufficiency of the evidence, defendant, without elaboration, makes the flat statement: ''No evidence of motive to kill on the part of appellant was ever presented.'' As Witkin points out (1 Witkin, Cal. Crimes (1963) § 54, p. 59) : ''. . . the prosecution need not prove a particular bad motive, and the defendant may be convicted although no motive at all is shown.'' (See *People* v. *Owens,* 132 Cal. 469, 471 [64 P. 770].)

Defendant also argues that the court might conclude that as a matter of law malice was not present and the judgment should be reduced to manslaughter. But malice has been defined for the purposes of criminal law as the intentional doing of the act without justification or excuse or mitigating circumstances, an intent to do a wrongful act. (1 Witkin, Cal. Crimes (1963) § 60, p. 64.)

The Supreme Court, in discussing an analogous situation, has said:

''To begin with, even at trial the necessary element of malice may be inferred from the circumstances of the homicide. Penal Code section 188 declares that 'Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. *It is implied, when no considerable provocation appears,* or when the circumstances attending the killing show an abandoned and malignant heart.' (Italics added.) From the emphasized language the rule is derived that 'When the killing is proved to have been committed by the defendant, and nothing further is shown, *the presumption of law is that it was malicious and an act of murder*; but in such a case the verdict should be murder of the second degree, and not murder of the first degree.' '' (*Jackson* v. *Superior Court,* 62 Cal.2d 521, 525-526 [42 Cal.Rptr. 838, 399 P.2d 374].)

The Supreme Court also pointed out in *Jackson* (p. 526) that where a defendant contends his conviction of second degree murder should be reduced to manslaughter he must present evidence of circumstances that justify mitigation:

''These rules of substantive law are implemented by Penal Code section 1105, which provides that 'Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.' It is true that this statute 'does not place on a defendant the burden of persuasion, but merely declares a rule of procedure that imposes on him a duty of going forward with evidence of mitigating circumstances.' [Citation.] Yet by the same token if the defendant fails to discharge the latter duty to the point of raising a reasonable doubt in the minds of the jurors, the presumption of malice will operate and the homicide will be deemed 'malicious and an act of murder.' ''

We conclude that defendant, who did not testify, failed to meet the burden of presenting evidence of mitigating circumstances. Consequently, as a reviewing court, we find no reason for reducing defendant's conviction of murder, second degree, to manslaughter.

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied July 10, 1968, and appellant's petition for a hearing by the Supreme Court was denied August 8, 1968.