[Crim. No. 9594. First Dist., Div. One. Aug. 16, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE RAY JACOBS, Defendant and Appellant.

## COUNSEL

James A. Hunt, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Karl J. Uebel, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from a judgment entered pursuant to a jury verdict finding him guilty of violating section 4501.5 of the Penal Code[1] (battery by a prisoner upon a non-prisoner). He contends that he was denied a statutory right to a speedy trial; that the trial court erred in denying his motion to dismiss the public defender and to permit him to defend himself, and in denying the public defender's motion to withdraw from the case; and that the trial court committed prejudicial error in instructing the jury. None of these contentions has merit. Therefore, the judgment must be affirmed.

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

## Pretrial Proceedings

An indictment charging defendant with violating section 4501.5[2] was filed on July 7, 1970.[3] On July 13 defendant appeared for an arraignment, was given a copy of the indictment, advised of his rights and the public defender was appointed to represent him. The public defender requested a continuance of one week in order that he might have an opportunity to interview defendant prior to entering a plea. The matter was continued to July 20.

On July 20 defendant informed the court that he wished to dismiss the public defender because a "major conflict of interest" had developed in that the public defender allegedly wanted him to plead guilty to a crime which he had never committed. The court ordered the matter continued to July 27 in order to permit defendant and the public defender to file affidavits. On July 27 defendant submitted an affidavit alleging that the public defender had advised him to plead guilty, and that after defendant informed him that he was innocent and wished a jury trial, the public defender became angry and told defendant that he would "dump" him at the trial. He alleged that the public defender refused his request to withdraw from the case. The court determined that the matter should be continued for one week in order to afford the public defender and the district attorney an opportunity to read defendant's affidavit and to file counteraffidavits. The court asked defendant, "Is that agreeable to you, continuing the matter one week for that purpose?" Defendant replied, "Yes." The court thereupon ordered the matter continued to August 3.

On August 3 the public defender informed the court that his counteraffidavit would be filed during the week. The court asked defendant if he had any objection to having the matter continued for one week in order that the court might have both affidavits before it prior to ruling on the motion. Defendant replied, "Well, I'd like to hear on it right now." The court concluded that it should afford the public defender an opportunity to submit an affidavit. Accordingly, the court ordered the matter continued to August 10. On August 10 the matter was continued to August 17, apparently because the public defender had not yet filed his affidavit. On August 12 the public defender filed an affidavit in which he denied that he had advised defendant to plead guilty, that he had ever become angry at defendant, or that he had informed defendant that he was going to "dump" him at his trial.

---

[2]The indictment charged that on May 5, 1970 defendant, being a prisoner undergoing sentence in the California State Prison at San Quentin, committed a battery on the person of an individual who was not himself a prisoner.

[3]Unless otherwise indicated, dates have reference to the year 1970.

When the motion to dismiss the public defender came on for hearing on August 17 the court asked defendant if he had anything further to add respecting his motion to disqualify the public defender. Defendant replied, "Well, I said all I need to say." The court then denied the motion. Defendant then informed the court that he waived his right to counsel. The court questioned defendant and concluded that he intended only to waive his right to be represented by the public defender. The court then concluded that this was merely a repetition of the motion which had just been denied. The public defender indicated to the court that he did not have a copy of the indictment in his file. The public defender then stated, "On behalf of Mr. Jacobs we request a one week continuance, Your Honor, for the purpose of entering a plea." The court ordered the matter continued to August 24.

The proceedings on August 24 were held at San Quentin Prison. The public defender informed the court that on August 21 defendant had refused to discuss the case with the attorney who was assigned to handle it and that defendant refused to cooperate with the public defender. Defendant then indicated to the court that he wished to waive his right to counsel and to assume his own defense. The court then interrogated defendant as to his age, education, his previous experience in criminal proceedings, and his legal training. Defendant responded that he was 23 years of age, that he had a seventh grade education, that he had been in court as a defendant in a criminal proceeding on five previous occasions, that he had never represented himself in any of these proceedings, that he had no legal training of any kind, that he had not read any law books, and that he knew nothing about the rules of evidence. Upon the conclusion of this interrogation the court denied defendant's request to represent himself.

The public defender then requested a two-week continuance in order to present points and authorities on the question of whether or not defendant could represent himself. Defendant immediately objected to this request. The public defender went on to submit to the court what he considered to be pertinent inquiries. The court then questioned defendant as to whether he knew what a battery was, the possible punishment for this offense, and whether he knew of any potential defense that might exist concerning the charge made against him. To each of these inquiries defendant replied "No." The court determined that it would adhere to its previous finding that defendant was not competent to act as his own attorney.

The court then read the indictment and defendant entered a plea of not guilty. He denied the charge of prior conviction on the ground it was "an illegal conviction." The public defender informed the court that he had

advised defendant of his right to be tried within 60 days after the filing of the indictment and that defendant had determined not to waive time. The court set the case for trial on October 19 at San Quentin Prison.

On October 19 the case was continued to October 20 for resetting. The proceedings on October 20 were held at San Quentin Prison. The court asked if the defense would consent to a continuance and defendant immediately replied, "No, no." The public defender then requested to be relieved of the case. He stated that he and defendant were in "substantial disagreement" as to the proper method of attacking the prior conviction. The public defender felt that it would be inadequate to merely deny that the prior conviction was legally obtained and that the appropriate remedy would be a writ of habeas corpus filed on behalf of defendant by an attorney appointed by the Court of Appeal. The court responded that the disagreement appeared to be limited to a collateral matter. The public defender stated that it reflected a basic difference as to the main charge in that he and defendant differed concerning the significant elements of the case and that they were no longer able to communicate. The court replied that it could not permit the public defender to withdraw simply on the basis of the existence of a disagreement between him and his client.

The court then stated that it was going to have to continue the case over defendant's objection. The court noted that the county was short one judge and one courtroom and that despite the assistance afforded by the Judicial Council the state of the calendar precluded bringing the case to trial for at least a month. The court further noted that the present policy was not to try more than one case involving a San Quentin inmate in the Marin County courthouse at a time. The public defender then moved to dismiss the indictment on the ground that defendant had not been brought to trial within 60 days of the filing of the indictment. The court stated that the motion was denied for the reasons already given. The court set the case for trial on October 26.

On October 26 the case came on for trial. After the jury had been impaneled and excused, the public defender renewed the motion to dismiss the indictment on the ground defendant had not been brought to trial within 60 days. The court stated that it would hear the motion on the following day. On October 27 the public defender repeated the motion. The district attorney argued in opposition to the motion. The motion was apparently argued on the basis that subdivision 2 of section 1382, providing for a dismissal if the case is not brought to trial within 60 days after the filing of the indictment, was applicable. The court then read the transcript of the proceedings held on October 20 and indicated that the transcript dis-

closed that defendant did not waive time on that date. The court stated that in its opinion the issue was whether or not there had been good cause for the continuance and whether defendant had waived time at the proceedings held on August 24, but that it was not prepared to consider this issue until after it had read the transcript. The court's bailiff then testified respecting security precautions taken at the Marin County courthouse and expressed the opinion that it was not feasible to hold more than one trial involving San Quentin inmates at a time. The motion was taken under submission. On this same day the court granted a motion by the People to dismiss the charge of a prior conviction in the interest of justice. The district attorney indicated that he did not intend to use the prior conviction for purposes of impeachment.

On October 29 the court denied the motion to dismiss the indictment. The court indicated that in its opinion defendant had waived any time lapse up to August 24 and that on that date trial was set for October 20, which was within the 60-day limit. The court further indicated that the continuance from October 20 to October 26 went beyond the statutory period but was supported by good cause. The court noted, first, that the Judicial Council had responded to request of the court by providing all the assistance that was possible. The court entered the transcripts of the proceedings held on August 24 and October 20 into evidence.

*Speedy Trial*

The Sixth Amendment to the United States Constitution and article I, section 13 of the California Constitution guarantee an accused the right to a speedy trial. The purpose of this guarantee is to protect an accused from having criminal charges pending against him for an unwarranted period of time. (*People* v. *Godlewski,* 22 Cal.2d 677, 682 [140 P.2d 381]; *In re Mugica,* 69 Cal.2d 516, 522 [72 Cal.Rptr. 645, 446 P.2d 525]; *People* v. *Aguirre,* 181 Cal.App.2d 577, 580 [5 Cal.Rptr. 477].) The legislative enactments respecting this right supplement the underlying constitutional guarantee. (*People* v. *Godlewski, supra,* at pp. 682, 684.)

In the present case the time elapsing from the filing of the indictment and the commencement of the trial was 3 months and 21 days, and the time intervening between the commission of the offense and the commencement of the trial was 174 days, slightly less than 6 months.

Although the People, defendant and the trial court were apparently under the impression that the applicable statute is section 1382, we perceive the applicable statute to be section 1381. The latter statute has been held to govern the constitutional and statutory rights of a California pris-

oner's or parolee's rights to a speedy trial on another felony charge. (See *In re Mugica, supra,* 69 Cal.2d 516, 523; *People* v. *Godlewski, supra,* 22 Cal.2d 677, 683; *People* v. *Rowden,* 268 Cal.App.2d 868, 872-873 [74 Cal.Rptr. 448]; *People* v. *Robinson,* 266 Cal.App.2d 261, 265-266 [72 Cal.Rptr. 33]; *People* v. *Hernandez,* 250 Cal.App.2d 842, 848-849 [58 Cal.Rptr. 835]; *People* v. *Goss,* 193 Cal.App.2d 720, 725-726 [14 Cal.Rptr. 569]; *People* v. *Aguirre, supra,* 181 Cal.App.2d 577, 580-581; *People* v. *Garmon,* 177 Cal.App.2d 301, 303 [2 Cal.Rptr. 60]; *People* v. *Ragsdale,* 177 Cal.App.2d 676, 678 [2 Cal.Rptr. 640]; *Osmulski* v. *Superior Court,* 169 Cal.App.2d 444, 445 [337 P.2d 520].)

Section 1381, in relevant part, provides that a person serving a term in a state prison, against whom another criminal charge was either *pending* at the time his term began or *was filed during* the time he was serving his sentence, has a right to have the pending or the new charge brought to trial in 90 days after written notice to the district attorney; and, if the action is not brought to trial within the 90-day period, the court, either on its own motion, on the motion of the district attorney, or the person confined or his counsel, or the Director of Corrections, *must* dismiss the charge. (See Witkin, Cal. Criminal Procedure (1963) § 314, p. 308.)

In *Robinson* (266 Cal.App.2d at pp. 264-265) and *Hernandez* (250 Cal.App.2d at pp. 848-849) it was specifically held that the right to a speedy trial is that which arises after written notice is given pursuant to section 1381. With respect to the requirement of a demand *Godlewski* observes as follows: "We find nothing unreasonable in the requirement for a demand. It does not abrogate the constitutional guarantee. It is merely regulatory of it. Persons already incarcerated in prison will not suffer imprisonment during delay." (22 Cal.2d at p. 684; see *People* v. *Rowden, supra,* 268 Cal.App.2d 868, 872; *In re Mugica, supra,* 69 Cal.2d 516, 523.)

The cases dealing with a California prisoner's or parolee's constitutional and statutory rights to a speedy trial on another felony charge have made no distinction between the cases in which a charge was pending at the time his term began and those in which a charge was filed during the time he was serving it. Nor is any distinction made in section 1381, nor has any been recognized by the cases, between a charge filed during the term a prisoner is serving, but which arose before he began serving the term and a charge which arose after he began serving his term.[4]

---

[4] In *Godlewski* and *Rowden* the charge was pending at the time the term began; in *Mugica* the offense occurred before the commencement of the term but was filed after it commenced; in *Robinson, Aguirre, Garmon, Ragsdale* and *Osmulski* the offense was committed and charges were filed during the time the prisoner was serving a sentence; and in *Hernandez* and *Goss* the crime was committed while the defendant was on parole. In *Hernandez,* where no demand for a trial was made, it was held that delay of seven months in bringing the case to trial did not deprive the defendant of a speedy trial; and in *Aguirre* it was held that a delay of one year between the com-

In contending that section 1382 is the applicable section, defendant is essentially urging that section 1381 is unconstitutional because it violates his right to equal protection of the laws. He contends that since the Legislature has granted defendants who are not in prison the right to be brought to trial within 60 days, it is precluded from providing that defendants who are inmates need only be brought to trial within 90 days. This argument misconstrues the import of the statutes. Section 1382 does not guarantee defendants an absolute right to be brought to trial within 60 days. It provides that they may be brought to trial at any time beyond the 60-day period provided good cause is established for the delay. Other defendants are thus not automatically entitled to a dismissal if they are brought to trial beyond the statutory period. (See *People* v. *Salcido,* 263 Cal.App.2d 1, 4-5 [69 Cal.Rptr. 193]; *People* v. *Chapman,* 261 Cal.App. 2d 149, 157-160 [67 Cal.Rptr. 601].) Moreover, even if there is not good cause to support the delay, a conviction will not be reversed upon appeal in the absence of a showing of prejudice. (*People* v. *Katzman,* 258 Cal. App.2d 777, 789-790 [66 Cal.Rptr. 319].) Under the provisions of section 1381, on the other hand, the trial may not be delayed beyond the 90-day period upon a showing of good cause by the People; it may be delayed only with the consent of the inmate, in which event the 90-day period commences to run anew from the date to which such request or consent continued the trial. Accordingly, unless the inmate consents, the charge *must* be dismissed if he is not brought to trial within 90 days after demand to be brought to trial. Section 1381, therefore, actually provides greater security and protection to the person charged than does section 1382.

We apprehend the constitutional guarantee of equal protection of the laws to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty, and property and in their pursuit of happiness. (See *Truax* v. *Corrigan,* 257 U.S. 312, 336-338 [66 L.Ed. 254, 264-266, 42 S.Ct. 124, 27 A.L.R. 375]; *Kentucky Corp.* v. *Paramount Exch.,* 262 U.S. 544, 550 [67 L.Ed. 1112, 1115-1116, 43 S.Ct. 636]; *Gray* v. *Whitmore,* 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904].)

"The concept of equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) As we observed in *Gray,* "This concept does not, however, require absolute equality [citations] or that a statute necessarily apply equally to all persons [citations]; rather, it permits a state to provide for differences so long as the result does not amount to an invidious discrimination. [Citations.]" (17 Cal.App.3d at pp. 21-22.)

mission of the offense and the issuance of the indictment did not deprive the defendant of a speedy trial.

The differences in sections 1381 and 1382 do not amount to invidious discrimination. We observe, initially, that persons who are serving the terms of imprisonment described in section 1381 are treated alike. We next observe that the persons described in the respective statutes are not in like circumstances. Section 1382 applies to persons who are not currently serving time as defined in section 1381. Essentially, section 1382 applies to persons awaiting trial who are either out on bail while awaiting trial or who are bailable, or who are serving misdemeanor sentences of less than 90 days. While both sections contemplate a speedy trial (see *In re Mugica, supra,* 69 Cal.2d 516, 523), the danger of suffering imprisonment during delay is not present where a person is already incarcerated as provided in section 1381. (See *People* v. *Godlewski, supra,* 22 Cal.2d 677, 684.) We perceive also that a person who is undergoing a prison sentence may prefer not to go to trial while a prisoner because of the possibility that his status as such a prisoner might prejudice his trial. We apprehend, too, that there may be other tactical reasons why a prisoner may not desire to be tried for the new charge while serving time. In any event the law grants such a prisoner his options. He may seek an early trial by making a demand for trial as prescribed by section 1381 or he may elect to defer the making of such demand until he deems it expedient to do so.

We apprehend that while both sections 1381 and 1382 have the objective of protecting the accused from having charges pending against him for an undue length of time (see *People* v. *Godlewski, supra,* 22 Cal.2d 677, 682; *In re Mugica, supra,* 69 Cal.2d 516, 522), there is an important rational distinction between the defendant described in section 1381 and the defendant entitled to invoke section 1382. Under section 1381 the defendant is incarcerated because he has been convicted of a felony; under section 1382 a defendant whose guilt or non-guilt remains undetermined may be suffering incarceration merely because he has not been able to make bail. The objective of section 1382 is to insure that the defendant in the latter circumstances will be given an early trial.

We recognize that while there is inequality between the persons described in section 1381 and those encompassed by the provisions of section 1382, the differences have been held by the California Supreme Court to be based on a rational basis and therefore do not amount to invidious discrimination. This is the apparent holding of *Godlewski* which has been followed by the Courts of Appeal. In two Court of Appeal cases, *Osmulski* v. *Superior Court, supra,* 169 Cal.App.2d 444, and *People* v. *Rowden, supra,* 268 Cal.App.2d 868, petitions for hearing were filed in the Supreme Court and were denied by the high court. As recently as 1968, the California Supreme Court in *In re Mugica, supra,* 69 Cal.2d at page 523, reaffirmed

the holdings of *Godlewski* and the Court of Appeal cases that the constitutional and statutory rights to a speedy trial in cases dealing with a prisoner or parolee who is charged with another felony are governed by section 1381. In *Mugica* the reviewing court specifically noted that the provisions of section 1381 apply both to a prisoner against whom a criminal charge was pending at the time his term began and a prisoner against whom another criminal charge is filed during the time he is serving a sentence. (At p. 523.) While we are not necessarily bound by the decisions of the Courts of Appeal in other districts or divisions (see 6 Witkin, Cal. Procedure (2d ed. 1971) p. 4560), we are disposed to follow these decisions since they are in accord with a prior decision of this court (i.e., *People* v. *Aguirre, supra,* 181 Cal.App.2d 577), and we *must* follow the decisions of the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ Defendant, at the time the instant charge was filed, was a prisoner serving a term in a state prison. He therefore may not properly complain that his right to a speedy trial was violated under section 1382 because this statute is inapplicable. (*People* v. *Rowden, supra,* 268 Cal.App.2d 868, 872-873.) Pursuant to section 1381 it was incumbent upon defendant to present written notice to the district attorney of the place of his imprisonment and of his desire to be brought to trial in order to start the running of the 90-day limit. (*People* v. *Godlewski, supra,* 22 Cal.2d 677, 682; *People* v. *Robinson, supra,* 266 Cal.App.2d 261, 264-265; *People* v. *Hernandez, supra,* 250 Cal.App.2d 842, 848-849; *Osmulski* v. *Superior Court, supra,* 169 Cal.App.2d 444, 445.) Defendant did not deliver such notice to the district attorney.

## Representation

### Public Defender

■ Defendant does not suggest that the court's denial of his motion to dismiss the public defender was unwarranted. Rather, he contends that the manner in which the motion was handled was improper. First, he asserts that the court should either have appointed counsel to argue the motion for him or undertaken the questioning of the public defender on his behalf. Second, he asserts that he was denied his right to cross-examine the public defender. Before proceeding to consider these contentions we note that defendant made no request for such an appointment at the time he made his motion to dismiss the public defender.

■ An indigent criminal defendant is entitled to have counsel appointed to represent him at every stage of the proceedings in which his substantial

rights may be affected. (*Mempa* v. *Rhay,* 389 U.S. 128, 134 [19 L.Ed.2d 336, 340, 88 S.Ct. 254]; *Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) That right may include the right to have court-appointed counsel discharged and other counsel substituted if it is shown that the failure would substantially impair or deny the right. (*People* v. *Mitchell,* 185 Cal.App.2d 507, 512 [8 Cal.Rptr. 319]; *People* v. *Williams,* 2 Cal.3d 894, 904 [88 Cal.Rptr. 208, 471 P.2d 1008].) Thus, where the record shows that the first appointed counsel is not adequately representing the accused, a defendant has the right to the appointment of other counsel. *(People* v. *Mitchell, supra; People* v. *Williams, supra.)*

■ The right to discharge court-appointed counsel and to substitute other counsel is not an absolute right, however, but depends upon a sufficient showing and the decision whether to permit such discharge and substitution is within the discretion of the trial court. (*People* v. *Mitchell, supra,* 185 Cal.App.2d 507, 512; *People* v. *Williams, supra,* 2 Cal.3d 894, 904.) ■ It should be noted, moreover, that there is no constitutional right to the appointment of an attorney who will conduct the defense in accordance with every suggestion of the defendant. (*In re Luna,* 257 Cal.App.2d 754, 757 [65 Cal.Rptr. 121]; *People* v. *Nailor,* 240 Cal.App. 2d 489, 494 [49 Cal.Rptr. 616]; see *People* v. *Mattson,* 51 Cal.2d 777, 793 [336 P.2d 937].) Moreover, a court is under no obligation to relieve the public defender because he and the petitioner disagree on strategy. *(In re Luna, supra; People* v. *Stewart,* 240 Cal.App.2d 1, 5 [50 Cal.Rptr. 26].)

■ We apprehend that a defendant is entitled to state his reasons for the request to discharge court-appointed counsel and to substitute new appointed counsel, and that it is prejudicial error to deny him the opportunity to state such reasons. (*People* v. *Marsden,* 2 Cal.3d 118, 123-125 [84 Cal.Rptr. 156, 465 P.2d 44]; *People* v. *Williams, supra,* 2 Cal.3d 894, 904.) But we have found no authority, nor has any been cited to us, that a defendant is entitled to have counsel appointed to argue his motion to dismiss his court-appointed counsel. We conclude, moreover, in the light of the foregoing authorities, that he does not have such a right. The decision, in each instance is whether court-appointed counsel is adequately representing the defendant. The court is in a position to make that determination without the necessity of having counsel appointed to present the motion. The determination rests upon whether the reasons given by the defendant suffice to indicate that he is not receiving adequate representation. We perceive that any disagreement between the accused and his court-appointed counsel is best resolved by the court upon its first determining whether differences actually exist and if they do, whether they are of such

a nature as to impede effective representation. (See *People* v. *Marsden, supra,* at pp. 123-126.) We also apprehend that the injection into the case of another attorney may, more often than not, compound the situation since that attorney may be called upon to question or challenge the trial strategy of the first appointed counsel. In sum, we perceive defendant's substantial right to be that which entitles him to competent counsel and adequate representation, not in the right to be represented by an attorney in proceedings to determine whether his appointed counsel is competent and is adequately representing him.

Accepting defendant's characterization of his motion to dismiss the public defender as having been brought in propria persona, it does not follow that the trial judge was required to question the public defender with respect to the merits of the motion. The trial court's obligation was to give defendant an opportunity to present argument or evidence in support of his contention that he was receiving inadequate representation. (See *People* v. *Marsden, supra,* 2 Cal.3d 118, 124; *Spector* v. *Superior Court,* 55 Cal.2d 839, 843 [13 Cal.Rptr. 189, 361 P.2d 909].) The record before us discloses that the judge below requested both parties to file affidavits and that at the hearing on the motion he specifically asked defendant if he had anything further to add in support of his motion. The judge thus provided defendant with ample opportunities in which to demonstrate that the public defender was not adequately representing his interests. There is no indication that defendant ever sought to question the public defender concerning the matters set forth in the affidavits. As the court provided defendant with an opportunity to elaborate upon the affidavits, there is no basis for concluding that defendant was denied his right to question the public defender.

In the present case we observe that the disagreement between defendant and the public defender is asserted to be the latter's advice to defendant that he plead guilty against defendant's wishes and contrary to defendant's desire to have a jury trial. This allegation, as well as defendant's statement that the public defender would "dump" him at the trial if defendant did not accede to the public defender's wishes, were denied by the public defender under oath. Upon the basis of this factual conflict the court did not abuse its discretion in denying defendant's motion. The record discloses, moreover, that defendant did plead not guilty, that he had a trial by jury, and that he was competently represented by the public defender at the trial.

Defendant concedes it was not necessarily error for the court to have refused the public defender's request to withdraw and thus to have declined to appoint new counsel, as the basis for the motion was only the

existence of a disagreement between defendant and the public defender with respect to the proper manner of handling the case. Defendant contends, however, that the court erred in not inquiring into the nature of the disagreement which had arisen.

 We have already pointed out that a trial court is not required to remove court-appointed counsel because of a disagreement as to the proper method of handling the defense. (*In re Luna, supra,* 257 Cal.App.2d 754, 757.) A court may be required to do so, however, if the disagreement has resulted in a "'breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" (*People* v. *Williams, supra,* 2 Cal.3d 894, 905.)

 Turning to the facts of the instant case, we note that the public defender informed the court at the time he made his request to withdraw that he and defendant were in "substantial disagreement" and that the "basic problem" concerned the handling of defendant's prior conviction. The court observed that this was a collateral matter and did not reflect any basic disagreement as to the defense of the main charge. The public defender replied as follows: "Yes, it does. It does reflect a basic difference in the main charge, because there are other elements to this case which I feel are significant, and Mr. Jacobs disagrees with me on. We have gotten to the point where there is complete lack of communication between myself and Mr. Jacobs, and—or between the office and Mr. Jacobs, and I feel on those grounds that I should request withdrawal." The court then denied the motion without making any inquiries regarding the consequences of this asserted breakdown in communications.

We apprehend that just as a decision on whether a defendant's request to dismiss court-appointed counsel rests in the sound discretion of the trial judge, so should the disposition of a similar motion made by the court-appointed counsel. (See *People* v. *Williams, supra,* 2 Cal.3d 894, 904.) We perceive, too, that a sufficient showing must be made to demonstrate that the disagreement between attorney and client has so deteriorated the relationship between them as to substantially impair the client's right to the effective assistance of counsel. (See *People* v. *Williams, supra,* at p. 905; *People* v. *Marsden, supra,* 2 Cal.3d 118, 123-124.) In the present case the public defender did not disclose the nature of the disagreement between him and defendant except to indicate that the "basic problem" was how to handle defendant's prior conviction. We here observe that defendant did not join in the public defender's request to withdraw nor did he seek to offer any explanation or reason for the disagreement. We observe, also, that neither defendant nor the public defender was precluded from making

any showing or explanation concerning the disagreement. With respect to the prior conviction the court was apparently under the impression that it was a collateral matter in view of the public defender's statement that the validity of the prior conviction could only be attacked by habeas corpus. No effort was made to indicate to the court that it was not. Under the circumstances the court did not abuse its discretion in denying the public defender's motion to withdraw.

 Assuming that it may be said that the court did abuse its discretion, we find that such error did not result in a miscarriage of justice. The record discloses that the charge of prior conviction was dismissed by the district attorney prior to trial and was no longer an issue in the case. The record discloses further that the public defender provided adequate representation to defendant during the course of the trial. Under the circumstances it does not appear reasonably probable that a result more favorable to defendant would have been reached if the public defender had been permitted to withdraw and substitute counsel had been appointed. (*People v. Watson*, 46 Cal.2d 818, 837 [299 P.2d 243].)[5]

*Self-representation*

 Defendant contends that the court erred in denying his request to represent himself in that the court should have informed him of the nature of the offense with which he was charged and of the sentence which could be imposed. Defendant apparently also contends that the court's determination was founded solely upon defendant's ignorance of the law and as such was improper.

 We observe, initially, that a defendant does not have a constitutionally protected right to represent himself. (*People v. Sharp*, 7 Cal.3d 448, 459, 461 [103 Cal.Rptr. 233, 499 P.2d 489].) A court may in a proper case permit a defendant to represent himself, but a denial of a request by a defendant that he be permitted to represent himself is not error unless the defendant can show prejudice, but even then, the error is

---

[5]We do not consider that the public defender was incompetent because he did not call an additional witness for the defense. The record discloses that the public defender was not told by defendant of the existence of the witness until the last day of trial. In an affidavit in support of a motion for new trial defendant stated he did not mention the existence of this witness earlier because he thought it irrelevant in that he did not anticipate that the People's witnesses would lie. This circumstance does not warrant an inference that there had been a breakdown in the attorney-client relationship of such magnitude as to have deprived defendant of the effective assistance of counsel. As was noted by the trial judge in disposing of the motion for new trial upon a consideration of the additional witness's affidavit, his testimony would have merely been cumulative.

not one of constitutional dimensions. (*People* v. *Sharp, supra,* at pp. 459-461.)

Where a defendant seeks to represent himself he must be able to meet certain standards. He must show that he has "an intelligent conception of the consequences of his act," and that he "understands the nature of the offense, the available pleas and defenses, and the possible punishments [citation]." (*People* v. *Floyd,* 1 Cal.3d 694, 703 [83 Cal.Rptr. 608, 464 P.2d 64]; see *People* v. *Sharp, supra,* 7 Cal.3d 448, 461.) In determining whether a defendant meets these standards there is no obligation on the part of the trial judge to impart a legal education to a defendant seeking to appear in propria persona. (*People* v. *Carter,* 66 Cal.2d 666, 673 [58 Cal.Rptr. 614, 427 P.2d 214].)

In the present case it was not encumbent upon the trial judge to advise defendant of the elements of the offense with which he was charged, or of the punishment which could be imposed, in determining whether defendant was competent to represent himself. Rather, the inquiry was properly directed to whether defendant understood the nature of the offense and the possible punishment. The responses to such inquiry were the determining factors in deciding whether defendant was competent to represent himself.

The inquiry made by the trial judge disclosed that defendant had only a seventh grade education; that he had never represented himself in a legal proceeding; that he had never read any law books; he was unaware of the rules of evidence; that he did not know the nature of the crime with which he was charged; that he was unaware of the defenses which might be raised; and that he did not know what sentence could be imposed.

The trial judge's determination of whether a defendant is capable of making a knowing and intelligent waiver of right to counsel is a matter of discretion and it will not be disturbed on appeal in the absence of a showing of abuse. (*People* v. *Floyd, supra,* 1 Cal.3d 694, 702-703.) In the present case there was no abuse of discretion since defendant by his responses clearly demonstrated that he did not meet the standards which might permit him to represent himself.

Moreover, on a review of the entire record a miscarriage of justice did not result, even assuming error in denying the motion to defend pro se. It does not appear from the record that a result more favorable to defendant would have been reached had he represented himself. (*People* v. *Watson, supra,* 46 Cal.2d 818, 837.)[6]

---

[6]Officer Kenneth E. Thomas, a correctional officer at San Quentin, testified that as he was escorting defendant to an isolation cell in San Quentin Prison he was struck

## Instructions

■■■ Defendant contends the court erred in failing to define battery and in refusing to instruct on lesser included offenses. The court instructed the jury that "the law provides that every person confined in a state prison of this state who commits a battery upon the person of an individual who is not himself a person confined therein, shall be guilty of a felony." This is a correct description of the crime with which defendant was charged. Battery has a common meaning, namely, "the act of battering or beating . . . the unlawful beating of another . . . ." (Webster's Third New Internat. Dict.) Defendant apparently contends that this common meaning does not encompass the legal requirement of intent and thus the court erred in not expanding upon the definition of battery. This argument is rendered ineffective by the fact that the court's next instruction was as follows: "In that crime there must exist a union or joint operation of act or conduct and criminal intent. But to constitute criminal intent it is not necessary that there should exist an intent to violate the law. Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent even though he may not know that his act or conduct is unlawful."

Adverting to the facts of the instant case, we note that defendant admitted he struck the officer. The primary issue was thus whether defendant had established that he acted in self-defense and full instructions were given on this issue. Under the circumstances of this case we find that the court's instructions defining battery and intent were adequate.

■■■ Defendant requested an instruction that the offense with which he was charged included the lesser offenses of assault, restricting or obstructing a public officer in the discharge or attempt to discharge any duty of his office, and disturbing the peace. He contends the court erred in refusing to give this instruction.

■■■ "The general rule is that a defendant is entitled upon request to instructions on necessarily included offenses which the evidence tends to prove." (*People* v. *St. Martin,* 1 Cal.3d 524, 532-533 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Noah,* 5 Cal.3d 469, 478 [96 Cal.Rptr. 441,

---

by defendant. His testimony was corroborated by two other officers who came to his aid. Defendant testified that Thomas pushed him, that he became frightened, and upon regaining his balance, struck Thomas. Another inmate testified that Thomas had pushed defendant before defendant struck Thomas. A third inmate testified that when he saw defendant after the incident his left eye was bleeding and he had bruises on the back of his neck. Thomas testified that he never pushed defendant or had any physical contact with him prior to the time he was hit by defendant.

487 P.2d 1009].) In this state two types of necessarily included offenses have been recognized: "First, where one offense cannot be committed without committing another offense, the latter offense is a necessarily included offense. [Citation.] Second, a lesser offense is necessarily included if it is within the offense specifically charged in the accusatory pleading, as distinguished from the statutory definition of the crime. [Citations.]" (*People* v. *St. Martin, supra,* at p. 536.) None of the crimes mentioned in the proffered instruction meet this test. Section 4501.5 requires as an element that the defendant be a person confined in a state prison. None of the crimes suggested as included offenses contain this element. (See *People* v. *Noah, supra,* at p. 479.) Moreover, since defendant admitted that he struck Thomas and it is undisputed that he was a prisoner in a state prison at the time he struck Thomas, a state prison correctional officer, there was no evidence from which a jury could conclude that defendant's action was less than a battery upon the person of an individual who himself is not a person confined in a state prison as that crime is delineated in section 4501.5. (See *People* v. *Noah, supra.*)

The judgment is affirmed.

Elkington, J., concurred.

**SIMS, J.**—I concur. I agree with the majority that the defendant's right to a speedy trial was not violated because he waived it in part, and because good cause was established for the continuances to which he did not consent.

Nevertheless in my opinion the provisions of Penal Code section 1381 should not be applied to proceedings in which the offense charged arises out of the defendant's imprisonment. It must be conceded that the authorities marshalled in the majority opinion sustain the view that section 1381 should be applied in all cases where "a charge is filed against a person during the time such person is serving a sentence in any state prison or county jail of this state . . . ." An analysis of these cases indicates that, with but three exceptions, they involve either offenses committed prior to the imprisonment for which charges were either then pending (see *People* v. *Godlewski* (1943) 22 Cal.2d 677, 679 [140 P.2d 381]; and *People* v. *Rowden* (1969) 268 Cal.App.2d 868, 870 [74 Cal.Rptr. 448]), or for which charges were subsequently filed (see *In re Mugica* (1968) 69 Cal.2d 516, 518 [72 Cal.Rptr. 645, 446 P.2d 525]), or offenses committed after imprisonment in which prosecution was not instituted until after what was asserted to be an undue delay (see *People* v. *Aguirre* (1960) 181 Cal.App.2d 577, 579 [5 Cal.Rptr. 477]; and *People* v. *Ragsdale* (1960) 177 Cal.App.2d 676, 677 [2 Cal.Rptr. 640]), or a failure to arraign the defendant, as re-

quired by Penal Code section 825 for an offense committed while he was on parole, after his parole was revoked and he was returned to the constructive custody of the Department of Corrections (see *People* v. *Goss* (1961) 193 Cal.App.2d 720, 722-724 [14 Cal.Rptr. 569]).

*People* v. *Robinson* (1968) 266 Cal.App.2d 261 [72 Cal.Rptr. 33] ostensibly is on all fours with the instant case. The offense, escape in violation of Penal Code section 4530, subdivision (b), was connected with his imprisonment, he was charged and arraigned, and the trial occurred more than 90 days after his arraignment. The court in reliance upon the two cases discussed below, as one of two alternative grounds for upholding the conviction against the assertion that the defendant had been denied a speedy trial, stated, "Furthermore, section 1381 of the Penal Code, while affording a defendant the right to be brought to trial within 90 days, conditions such right upon a written request by the defendant. No request was made in the instant case, and there is no showing in the record that either defendant or his attorney was ignorant of the necessity for such request. A prisoner in the position of defendant must make the demand that the People proceed to trial before he can complain. (*Osmulski* v. *Superior Court* (1959) 169 Cal.App.2d 444, 445 . . . .)" (266 Cal.App.2d at pp. 264-265.) In my opinion the weight to be given this statement is diminished by the fact that the court had already noted that the defendant had waived any right to a speedy trial because he had failed to object at any time before going to trial (*id.*, p. 264), and because in neither *Robinson* nor in the case upon which it relies was the question of a distinction between new prison connected offenses and pending charges for other offenses considered.

In *Osmulski* v. *Superior Court* (1959) 169 Cal.App.2d 444 [337 P.2d 520] the charge was also escape. In discharging an alternative writ of prohibition, and denying a peremptory writ, the court, without distinguishing between the nature of the charges involved purported to follow *People* v. *Godlewski, supra,* and concluded, "It appears by the petition that at the time the charge of escape was made against him he was a prisoner serving a sentence in a state prison. Therefore, the provisions of section 1381 of the Penal Code govern his rights. . . . A prisoner in the position of petitioner is entitled to the rights given him under section 1381 and must make the demand that the People proceed to trial before he can complain." (169 Cal.App.2d at p. 445.)

In *People* v. *Hernandez* (1967) 250 Cal.App.2d 842 [58 Cal.Rptr. 835], to which the court also referred in *Robinson,* the defendant was brought to trial within 52 days after he was arraigned on an indictment for an

offense committed while he was on parole. The indictment was filed six months and ten days after the offense was committed, at which time he had been arrested and held as a parole violator, and following the dismissal of two successive informations which had been filed for the same offense. Although the defendant was brought to trial within 60 days, as well as within 90 days on the current charge, the court disposed of his contention that he was denied a speedy trial on the theory that he could not raise the point without giving the notice required by section 1381 (250 Cal.App.2d at p. 849). In this proceeding it is unnecessary to consider whether an offense committed on parole should be treated as an offense committed prior to imprisonment for which charges are pending (i.e., if filed prior to actual return to actual or constructive physical custody of the Department of Corrections), or subsequently filed, or if they should be treated as urged below for offenses arising out of the custodial status.

In the current case, as in *Robinson* and *Osmulski,* it is absurd to require a defendant who has been charged and arraigned while in the custody of the Department of Corrections to deliver to the district attorney of the county in which the charge is filed "written notice of the place of his imprisonment or commitment and his desire to be brought to trial upon said charge." These requirements only make sense when applied to extrinsic charges arising prior to the imprisonment, and perhaps (see above), while free from actual custody, on parole. In such offenses the right to a speedy trial is thwarted for good cause, the defendant's incarceration. Section 1381 provides a means for bringing the outstanding charge to a conclusion if the defendant so desires. In the pending situation the election to file the charges is presumably made by those responsible for his custody in conjunction with those responsible for prosecution in the jurisdiction in which he was confined and the offense occurred. The time for prosecution of such actions should not be extended by the application of provisions which were designed for the protection of the accused.

In my opinion when an indictment or information is filed against one undergoing a term of imprisonment for an offense arising out of that imprisonment, the provisions of section 1382, subdivision 2, should apply and he should be tried within 60 days after the finding of in the indictment or filing of the information unless good cause to the contrary is shown, or he expressly or impliedly waives time. It is recognized that the defendant is not suffering unwarranted incarceration by the delay, but all of the other reasons for speedy disposition of the proceedings are applicable.

A petition for a rehearing was denied September 1, 1972, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied October 12, 1972.