[Crim. No. 15854. Second Dist., Div. One. June 12, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN STANTON, JR., Defendant and Appellant.

Josef Dubiel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery in the first degree.

A résumé of some of the evidence is as follows: shortly after noon on March 6, 1968, Mrs. Helen Jackson was working as a checker at a delicatessen market on West Washington Boulevard in Los Angeles. The store was visited about that time by Helen's brother-in-law, W. H. Winston, who inquired as to where Helen's sister could be found and who then left when Helen told him that she had not seen her sister. About 20 minutes later, Winston returned, parked his green 1967 Pontiac Grand Prix automobile in front of the Anderson home nearby, and once again entered the market. Shortly thereafter the defendant Stanton entered, got a can of beer from the refrigerator at the rear of the store, returned to the checkout stand where Winston was standing, and asked for a pack of cigarettes. While Helen Jackson took the cigarettes from a case on the counter, Stanton drew a gun, thrust it into the ribs of Winston who stood beside him, and directed Helen to give him all of the money and a large paper bag. Winston moved behind the counter with Helen and the defendant then aimed his weapon at both of them. Winston urged her not to sound the alarm, and Helen in response to Stanton's command turned over to him the money (about $35) from the cash register and also a large paper bag. Stanton deposited the money, beer, and cigarettes in the bag and, as he left the premises, dropped his gun into the paper bag. As soon as he

left the store Helen pressed the alarm button. During the interval of several minutes when Stanton confronted her, directly and unmasked at a distance of 4 to 6 feet across the counter, Helen was able to observe him clearly. She later described him to police as a Negro who wore a mustache, a small beard and a green shirt.

The only other person in the market during the commission of the crime was a box-boy who was faced to the wall and who was occupied with placing soft drinks in a dispensing machine. Stanton spoke in normal tones and the box-boy neither heard nor turned around.

Mrs. Beloit Anderson, who was at home and ill on the day of the crime, observed certain suspicious events from the second story window of her nearby residence and called Helen just after she had turned in the alarm and asked her whether the store had just been robbed. Mrs. Anderson had observed Winston park in front of her residence and leave his "beautiful car with a dent" to walk to the delicatessen. She noticed that the other occupant of the car was Stanton who soon also left the car to go toward the store. Before long Stanton ran back to the car carrying a paper bag which he threw inside the car. He got in and knelt down on the floor of the automobile, removed his shirt, then left the car again and ran bare-chested across the lawn to the back of the building. Shortly thereafter the police responded to Helen Jackson's call. They searched the car Winston had been driving and there found the paper sack and the can of beer, the cigarettes, a pistol and a green shirt with a $20 bill in the pocket.

At about 1:20 p.m. that same afternoon Stanton was arrested in the hallway of an apartment building on Hobart Street. He was wearing no shirt and had about $36 in his pockets. After he was advised of his constitutional rights Stanton told the arresting officers that he had received the $36 in his pocket from the unemployment office on the day of his arrest, that he hitchhiked away from the office and was picked up by a man in a green Pontiac who demanded his money at gunpoint, then grabbed his shirt and pulled it off when Stanton made his escape. It was stipulated that on the morning of March 6, 1968, Stanton received in person $36 from the Department of Employment. Stanton testified in court that he had no other money when he visited the Department of Employment and that after receiving the cash he went to the residence of a friend named Haskins and there removed his shirt and helped to wash Haskins' car. From there he tried to

reach Mike, his part-time employer, by telephone and was told he could be found at an apartment building on Hobart Street. Haskins drove Stanton to the apartment building where he was subsequently arrested while looking for his employer; Stanton's testimony was corroborated by his friend, Haskins.

Appellant first contends that his identification by Helen Jackson should have been excluded from evidence because the lineup conditions were grossly unfair and prejudiced his constitutional rights. Mrs. Anderson identified Stanton from mug shots. Although Helen Jackson recognized no one from a selection of mug shots, she immediately identified Stanton in the police lineup the next day.

Stanton was represented by the public defender at the time of the lineup where he appeared with five other men and was viewed by Helen Jackson, a deputy district attorney, a police officer, and his (defendant's) attorney. When he was interviewed by the public defender Stanton was wearing no shirt. He was requested by the officers to wear, and he did wear when he appeared in the lineup, the green shirt that had been worn by the robber during the holdup.

Appellant was represented by counsel during the lineup in compliance with due process requirements. (*United States* v. *Wade*, 388 U.S. 219 [18 L.Ed.2d 1149, 87 S.Ct. 1926] ; *Gilbert* v. *California*, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].) Nonetheless, if manifest unfairness pervaded the extrajudicial identification because the lineup was ''unnecessarily suggestive and conducive to irreparable mistaken identification'' it must be considered tantamount to a denial of due process of law and the evidence must be excluded. (*Stovall* v. *Denno*, 388 U.S. 293, 301 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967] ; *People* v. *Caruso*, 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336].) The court accepted evidence concerning the circumstances of the lineup outside the presence of the jury, determined that the proceedings were not inherently unfair, and permitted the evidence to be introduced once more before the jury which could properly consider the circumstances as affecting the accuracy of Helen Jackson's identification. The conditions of the lineup in the present case were equitable and fair. All the men in the lineup were Negroes so that no one stood forth by contrast. (*People* v. *Hogan*, 264 Cal.App.2d 254, 261 [70 Cal. Rptr. 448] ; *People* v. *Menchaca*, 264 Cal.App.2d 642 [70 Cal.Rptr. 843].) They ranged in age and size; two were older and three younger while two were heavier and three were thinner than the suspect. The man standing next to Stanton

also wore a beard and was of approximately the same age and weight as the suspect. Although Stanton, who was bare-chested before the lineup, told his counsel about the request that he was to wear the shirt, no objection was made and he put it on. In fact, the attorney who represented Stanton further testified that the shirt changed color in different lights and that it was, in any event, difficult to see the shirt or its details in the crowded lineup. Stanton, wearing the green shirt, was clearly less notable in the lineup than had he appeared bare-chested in a group of fully-clothed men. Finally, although Helen Jackson noticed the shirt, it is significant that she identified Stanton promptly, without hesitation, and her identification was clear, positive and immediate as he entered in the lineup. She testified that she identified him by his facial characteristics, not from the color of his shirt, at a time when his features remained fresh in her mind. Stanton's original direct confrontation for an interval of several minutes before his victim distinguishes this case. (cf. *People* v. *Caruso*, 68 Cal.2d 183, 185 [65 Cal.Rptr. 336, 436 P.2d 336].) The lineup in the present case was properly found by the trial court not to be "unnecessarily suggestive" (*Stovall* v. *Denno, supra*, 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206]) and admission of the evidence was not violative of due process for this reason. The jury heard and considered the circumstances of the lineup and impliedly found that the probative value of Helen Jackson's in-court identification of appellant as her robber was not impaired. The evidence adequately supports the jury's verdict. (*People* v. *Mora*, 139 Cal.App.2d 266, 271-272 [293 P.2d 522]; *People* v. *Yates*, 165 Cal.App.2d 489, 493 [332 P.2d 314].)

 Appellant next contends that the requested instruction relating to the necessarily included offense of grand theft from the person should have been given since the gun was thrust in Winston's ribs and not aimed at Helen Jackson, who seemed uncertain of its color and description. An instruction relating to a lesser included offense is required where the evidence or defense is susceptible of an interpretation, no matter how remote, which if accepted would render the defendant guilty of the lesser included rather than the specifically charged offense. (*People* v. *Modesto*, 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33].) The charged offense in the present case was the removal of property in the possession of another from his person against his will by force or fear (Pen. Code, § 211) and the jury was so instructed. The

defense did not relate to a mitigation of the circumstances surrounding the criminal event, but constituted a complete denial of the commission of a crime. Mrs. Jackson testified that the gun, which she adequately described and identified, was pointed first at her brother-in-law and then at her. The evidence presented was subject to a single alternative: Stanton either committed the crime charged or he committed no crime. (*People* v. *Watson,* 173 Cal.App.2d 440, 445 [343 P.2d 323]; *People* v. *Derwin,* 78 Cal.App. 781, 784 [248 P. 1029]; *People* v. *Morrison,* 228 Cal.App.2d 707, 713 [39 Cal.Rptr. 874].) In cases where it has been held that an instruction on a lesser included offense was improperly omitted or refused, there has been a defense and evidence relating to mitigating circumstances. (*People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281]; *People* v. *Modesto, supra,* 59 Cal.2d 722.) "Here the evidence, . . . is sufficient to support a finding of guilty of the greater offense, and is also sufficient to support a finding of guilty of the lesser offense because it is the very nature of the greater offense that it could not have been committed without the defendant having the intent and doing the acts which constitute the lesser offense. . . .

"In this intermediate situation, it is not error for the trial court, if so requested and if in its discretion it elects to do so, to give instructions on the lesser offense, since a verdict of guilt of such lesser offense would not be without support in the record. However, . . . it has long been settled that the trial court need not, even if requested, instruct the jury on the existence and definition of a lesser and included offense if the evidence was such that the defendant, if guilty at all, was guilty of something beyond the lesser offense." (*People* v. *Morrison,* 228 Cal.App.2d 707, 713 [39 Cal.Rptr. 874]; *People* v. *Allison,* 245 Cal.App.2d 568, 574 [54 Cal.Rptr. 148]; *People* v. *Garcia,* 250 Cal.App.2d 15, 17, 18 [58 Cal.Rptr. 186].) The requested instruction was inappropriate and the court properly rejected it for that reason.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.