[Crim. No. 9152. First Dist., Div. Three. June 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GROCE, Defendant and Appellant.

## COUNSEL

Christopher M. Reuss, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci, D. Stuart Candland and Gloria DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (H. C.), J.**—Appellant was charged with two counts of assault with a deadly weapon (Pen. Code, § 245), i.e., for the stabbing of one John Arriola and a Mrs. Elizabeth Dillard. The jury returned a verdict of guilty of the assault on Mrs. Dillard but not guilty of the count charging him with assault on Arriola.

Appellant makes two claims of reversal for error: first, the court erred in refusing to instruct on simple assault and battery as a lesser included offense, and, second, the court failed to make inquiry as to the adequacy of his representation by the public defender.

The facts: For several months appellant and Mrs. Dillard had been living together. This relationship had been severed just prior to September 21, 1969. On that date, appellant observed Mrs. Dillard, her young son and three adults sitting in a parked car near a Doggie Diner in Alameda County. The appellant walked to the car and an altercation occurred involving Mrs. Dillard, two of the male occupants of the automobile on one side and appellant on the other. Appellant was wounded twice by a gun fired by John Arriola, one of the occupants, who stated he fired the shot in defense of Mrs. Dillard. Arriola and Mrs. Dillard claimed that appellant stabbed them. Mrs. Dillard claimed that she was stabbed because she had refused to continue being appellant's girl friend. Appellant's version of the conflict was in sharp contrast with that of the occupants of the Dillard automobile. Appellant testified that he had heard Mrs. Dillard was living with another man and had threatened to kill him. He approached the car merely to talk to her. He asked her why she wanted to "knock [him] off." He further stated he was attacked by John Arriola and acted in self-defense. Appellant denied assaulting Mrs. Dillard or that she had been stabbed. There was evidence that Mrs. Dillard and the occupants of the automobile had some beer before the altercation. The owner of that automobile, a Mr. Johnson, was intoxicated.

■ Appellant requested instructions on the lesser but included offenses of simple assault and battery (Pen. Code, §§ 240, 242). The trial court refused these instructions.

"[I]t has long been settled that the trial court need not, even if requested, instruct the jury on the existence and definition of a lesser and included offense if the evidence was such that the defendant, if guilty at all, was guilty of something beyond the lesser offense." (*People* v. *Morrison,* 228 Cal.App.2d 707, 713 [39 Cal.Rptr. 874]; *People* v. *Stanton,* 274 Cal.App. 2d 13, 18 [78 Cal.Rptr. 771].) An example of a situation in which the evidence will not support a finding of guilt of the lesser offense is a case in which the defendant denies complicity. (*People* v. *Morrison, supra; People* v. *Tiner,* 11 Cal.App.3d 428, 434 [89 Cal.Rptr. 834]; *People* v. *McCoy,* 25 Cal.2d 177, 187-188 [153 P.2d 315].)

Had appellant testified to facts indicating an assault upon Mrs. Dillard but that he did not attack her with a knife, the instruction would have been warranted and the cases of *People* v. *Cooper,* 268 Cal.App.2d 34 [73 Cal.Rptr. 608], and *People* v. *Hood,* 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370], relied on by appellant, would apply. Appellant's defense consisted entirely of a denial of any kind of attack on Mrs. Dillard and since the gist of the prosecution testimony was the employment of a knife during the attack, the court was correct in refusing the instruction.

■ Appellant next claims that the trial court erred in failing to make inquiry into the adequacy of his representation by the public defender.

We agree with appellant.

The following are remarks of the court and appellant: "THE DEFENDANT: Your Honor, sir, I don't think Mr. Ryder is representing me in my best interest, sir, and it seems as though he is more for the District Attorney than me. I never had no record before, and again I raise my right hand and swear that I am an honest citizen, and I got mixed up with this woman, *and so the woman is supposed to be cut when she's not. He don't want to bring up the doctor's report,* the gun is not here, all that stuff is supposed to be here, and I know, sir, and again I am hurting. I am sick on the inside. I just can't worry about him. THE COURT: Mr. Groce, Mr. Ryder is a very, very competent attorney, and insofar as the voir dire of the jury, and also during the cross-examination as well as during the direct examination of witnesses, so far he's been giving you very good representation. THE DEFENDANT: But there are three men to my one. THE COURT: He will get the witnesses. He's told me he has a number of witnesses he is calling in your behalf, and I am sure that he will give you the most adequate representation. THE DEFENDANT: Well, I trusted very

much in him until this morning. THE COURT: You are unable to employ an attorney yourself? THE DEFENDANT: Yes sir, I am, but I need help. THE COURT: Well, the matter has been regularly scheduled for trial. THE DEFENDANT: As a decent citizen I have never been in no trouble before, sir. THE COURT: I think he is giving you adequate representation, and what you are trying to do is make a motion to have him relieved and substitute someone else. The motion is denied. We will proceed." (Italics added.)

Mrs. Dillard testified that she was taken to Highland Hospital after the incident. She testified that her stab wounds were stitched and she was given a shot. She also testified to having but one beer prior to the incident. One of the male occupants of the automobile in which she was riding was admittedly intoxicated. Since the decision of the jury was necessarily dependent upon its determination as to the credibility of witnesses, the hospital report was a crucial piece of evidence. Had it contained the information that Mrs. Dillard was not wounded, or that she also was under the influence of alcohol to any degree at the time of the medical treatment, the credibility of Mrs. Dillard and other of the state's witnesses would have been seriously impugned. The trial judge, of course, was not required to demand the production of the records. His duty was merely to make inquiry as to whether the failure to produce those records was a matter of discretion or neglect of appellant's counsel.

It is recognized that the objection is frequently made to the inadequacy of counsel. This objection seldom has merit because the decision of the attorney is normally made after due consideration on the trial tactics to pursue in the interest of his client. The court's inquiry, of course, is not to ascertain defense counsel's reasons for his decision for not following procedure requested by the defendant. The inquiry should be limited to whether the attorney made a knowledgeable election on the subject.

The Supreme Court in *People* v. *Marsden,* 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], reversed a judgment of conviction on the ground that the trial court did not adequately investigate the defendant's objections to the handling of his case. In *Marsden,* the trial judge refused to permit the defendant to explain his reasons for claiming that his counsel was not adequately representing him.

In *Marsden,* the court said at page 124: *"Thus, a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. . . ."* (Italics added.)

In the case before us, appellant, in the judge's chambers, directed the

court's attention to specific important instances of alleged inadequacy of his representation, i.e., the existence or nonexistence of stab wounds and other pertinent evidence that could have been established by hospital records. The court ordered the trial to proceed without inquiry into counsel's reason for not producing the physician or his hospital records. We are left the alternative of speculating as to the contents or to reverse for the error.

Rather than guess, we order that the judgment be reversed.

Caldecott, J., concurred.

**DRAPER, P. J.**—I dissent.

Of course, we are governed by the Supreme Court decision (*People* v. *Marsden*, 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]). But in that case, the trial judge flatly refused defendant's request to "bring up specific instances" of the claimed shortcomings of trial counsel. As I read the decision, it but holds that the trial court could not exercise its discretion "without listening to his [defendant's] reasons for requesting a change of attorneys." To me, it was the refusal of defendant's offer to relate specific instances of misconduct which, alone, required reversal. Here, the court neither interrupted nor limited appellant's statement of his reasons for dissatisfaction. It has not been suggested that *Marsden* requires affirmative solicitation of additional complaints or of amplification of those stated.

The majority, however, holds that the trial court was under some duty to inquire as to whether counsel's omission to produce evidence suggested by defendant's complaint "was a matter of discretion or the result of neglect." I am at a loss to know how such inquiry can be made. The complementary privileges of the Fifth Amendment and the attorney-client relationship would bar direct inquiry by the court of either defendant or counsel as to the truth of the facts underlying defendant's complaints. Of course, the prosecutor is present at the hearing. In his presence, the court's posing of the question suggested by the majority would confront defense counsel with an impossible dilemma. To assert a "tactical reason" would necessarily concede the existence of evidence adverse to defendant but not yet produced by the prosecution. To concede negligence would require defense counsel to affirmatively introduce the evidence, however adverse, before the trial closed, or to create a built-in ground for reversal by adhering to his view, however correct, that the evidence would be harmful. Certainly, if the Supreme Court had intended to raise this problem, the opinion would have discussed it and suggested some guidelines for the trial courts.

Appellate counsel has made no offer to show that either the hospital

record or the doctor's notes would in fact have benefitted defendant. He but speculates that they might have done so. If speculation is to be indulged in, it must be noted that defendant's reference to "the doctor's report" is at best vague. The asserted victim said she had been treated for her wound. Defendant himself had been shot. Trial counsel did produce, with his records, the doctor who had treated defendant at the same emergency hospital where the victim said her wounds were sutured, and at about the same time. It is most difficult to assume that counsel refrained from interrogating the same emergency service about the treatment of the victim, or that such inquiries revealed information helpful to defendant which counsel failed or refused to produce through the doctor whom he did call. In any event, it is clear that *Marsden* does not direct that intendments in any such speculation are to be against the competency of counsel and the determination of the trial court.

Trial judges soon learn the frequent tendency of lay defendants to stress refutation of wholly collateral matters by showings which necessarily are adverse to them on the important issues which determine guilt. This doubtless is one reason for insisting upon legal representation of defendants in criminal cases. I cannot discount the determination of the able and experienced trial judge here, made only after an unimpeded statement by the defendant of his complaints against counsel.

Objection to appointed counsel's adequacy, after a jury trial is well under way, is becoming an increasingly common ploy among defendants. The majority's requirement of a trial of counsel's adequacy, in the absence of the jury and on an unconvincing complaint by the lay defendant, would but increase resort to this ploy without discernible benefit to ultimate justice.

I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied September 2, 1971.