[Crim. No. 21517. First Dist., Div. One. May 11, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN W. YOUNG, Defendant and Appellant.

**COUNSEL**

Robert David Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and W. Eric Collins, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.\***—Defendant Steven W. Young was charged by information with two counts of automobile burglary in violation of Penal Code section 459 and with three prior felony convictions within the meaning of Penal Code section 667.5, subdivision (b). Defendant pleaded not guilty and denied the alleged priors. A jury trial resulted in his conviction on one count of burglary and in findings that the alleged priors were true. The jury deadlocked on the second burglary count, which later was ordered dismissed. Defendant was sentenced to three years in state prison.

*\*Before Racanelli, P. J., Elkington, J., and Grodin, J.*

Defendant's sole contention on appeal is that he was deprived of his constitutional right to the effective assistance of counsel because the trial court denied his motion to discharge his court-appointed attorney and substitute new counsel without questioning the public defender concerning defendant's allegations of inadequate representation.

Early on the morning of February 27, 1980, Vickie Weir, a nurse and synchronized swimming coach at Stanford University, parked her 1976 Oldsmobile in the lot adjacent to the campus swimming pool. She locked the car, leaving her purse underneath the seat. At about 9:30 that morning Richard Schavone, a diving coach at Stanford, noticed a man in the parking lot looking into first one car and then another. As he watched, the man broke the window on the driver's side of Weir's car and removed her purse. When Schavone called to the man, he dropped the purse under the front bumper of a black Pontiac parked nearby and ran. Schavone caught up with the man and persuaded him to return with Schavone to the pool area. Leaving the suspect with the other swim coach, Skip Kenney, Schavone telephoned campus police. While Schavone was on the telephone, the man again fled.

Shortly after noon that day defendant was apprehended by campus police as he attempted to drive off campus in the black Pontiac. Both Schavone and Kenney identified defendant in a photo display that day and at trial.

Defendant testified that he had driven to campus to go jogging, he had not been near the swimming pool area, and he had not taken anyone's purse.

On the morning of trial defendant's court-appointed counsel, Deputy Public Defender John Horning, brought it to the court's attention that defendant was insisting on wearing jail attire for the trial. Despite efforts by the court and further effort by counsel to persuade him to wear civilian garb, defendant persisted in his intention. At this same time, defendant also reaffirmed his decision to deny the three alleged priors. After the court reviewed with defendant at length the consequences of denying the priors, Mr. Horning consulted with his client off-record and reported to the court that although he believed defendant would do better to admit the priors and had so advised him, defendant did not want to admit the priors and they would stand denied. Jury voir dire then commenced.

After a lunch recess and before resumption of voir dire, Mr. Horning informed the court that defendant wanted to discharge him. The following colloquy ensued:

"THE COURT: Mr. Young?

".        .        .        .        .        .        .        .        .        .        .        .        .        .        .

"THE DEFENDANT: I don't think Mr. Horning been adequate in my trial. It appears he hasn't taken any interest in it as far as my defense goes.

"THE COURT: Why do you say that? What are the reasons?

"THE DEFENDANT: The reasons is that, you know, I don't think Mr. Horning, you know, would like to listen to anything that I have to say. I feel I have to—I have a lot to say and it's concerning my defense. Mr. Horning feels, you know, maybe, you know, I should just keep quiet, not saying nothing and let me handle it, you know.

"THE COURT: What kinds of—let's conduct the rest of this inquiry in camera.

".        .        .        .        .        .        .        .        .        .        .        .        .        .        .

"What types of things—

"THE DEFENDANT: Well, such as I don't see, you know, as I say, in the court room one Afro-American present.

"Mr. Horning just said, so, you know, it goes like that, you know. And I don't think that, you know—that's unfair from deep within myself, you know. And I think you should be, you know, at least have more Afro-Americans around here.

"When I tried to collaborate this to Mr. Horning, Mr. Horning, you know, he kind of like give me the cold shoulder, like he didn't want to hear anything I have to say.

"THE COURT: Well, of course, part of the problem, I suspect, Mr. Young, is that I could overhear some of your conversation this morning about whether you're going to wear civilian clothes, whether you're

going to admit the priors, whether you have a properly constituted jury panel is something that your attorney is aware of, would like to insure, I'm sure, if it were improper.

"I think under the circumstances, the case has been assigned for trial. We brought it in last week. Have had in limine motions, in the process of jury selection. It's really up to your attorney to run the trial.

"I hope that the two of you have a cooperative relationship but, frankly, on the basis of what you've told me, I see no reason for discharging him at this time.

"Are there any other problems, any other reasons?

"THE DEFENDANT: I just don't feel comfortable, makes me feel like— lacking in my confidence to the competency of Mr. Horning, you know, representing me. This is what I'm trying to say.

"THE COURT: Okay. Mr. Horning has practiced in this county for some time, in this court on many occasions. I consider him to be extremely competent.

"I recognize that it's a difficult situation, and if you won't go along with his tactical decisions, there's a limit to how far he can go, to do more than recommend to you. But I don't see any basis for discharging Mr. Horning, and your motion is denied."

Relying on *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], *People v. Groce* (1971) 18 Cal.App.3d 292 [95 Cal.Rptr. 688], and *People v. Munoz* (1974) 41 Cal.App.3d 62 [115 Cal.Rptr. 726], defendant now contends that the denial of the motion to discharge the public defender and substitute new counsel without questioning counsel concerning defendant's allegations, deprived him of a fair trial.

In *People v. Marsden, supra*, 2 Cal.3d 118, the Supreme Court held that when a defendant seeks to discharge appointed counsel and substitute another attorney, the trial court must give the defendant an opportunity to state his reasons before ruling on the motion. In reaching this conclusion, the court started with the propositions that (1) criminal defendants are entitled to the assistance of court-appointed counsel if

they are unable to employ private counsel; (2) the right of a defendant to the assistance of appointed counsel may include the right to have appointed counsel discharged or other counsel substituted, if it is shown that failure to do so would substantially impair or deny the right; (3) the right to such discharge or substitution is not absolute, but obtains only if it is sufficiently shown that the right to the assistance of counsel would be substantially impaired in case the request is not granted; and (4) within these limits there is a field of discretion for the court. (2 Cal.3d at p. 123 and cases there cited.)

Addressing the proper exercise of the trial court's discretion, the court stated: "A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request.... Thus, a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney." (2 Cal.3d at pp. 123-124.)

The transcript of the hearing on defendant's motion to discharge counsel shows that the trial court made inquiry and listened to defendant's reasons. *Marsden* requires no more.

Conceding that on the face of it the trial court's inquiry appears to satisfy *Marsden*, defendant argues that under the amplifying cases of *People* v. *Groce, supra*, 18 Cal.App.3d 292, and *People* v. *Munoz, supra*, 41 Cal.App.3d 62, the court could not knowledgeably rule on defendant's motion without questioning the public defender concerning defendant's allegations. However, defendant's reliance on *Groce* and *Munoz* is misplaced.

In *People* v. *Groce, supra*, 18 Cal.App.3d 292, the defendant was charged with assault and battery. Asserting that the alleged victim in fact sustained no injuries, defendant moved to discharge court-appointed counsel because he failed to obtain hospital records that might sustain defendant's position. The court held that when a defendant asserts "specific important instances of alleged inadequacy of [counsel's] representation," i.e., failure to secure specified potentially exonerating evidence, it is error for the trial court to deny a motion to discharge "without inquiry into counsel's reason" for not producing the evidence. (18 Cal.App.3d at p. 297.)

In *People* v. *Munoz, supra,* 41 Cal.App.3d 62, the defendant accused his appointed attorney of not wanting to defend him; he alleged that the attorney told him he was guilty and did not have a "chance." (41 Cal.App.3d at p. 66.) Viewing these allegations as tantamount to charging that counsel was not committed to providing an effective defense, the court held that the trial court erred in denying defendant's request for substitution of attorneys without inquiry into the court-appointed attorney's state of mind. (*Ibid.* Accord *People* v. *Cruz* (1978) 83 Cal. App.3d 308, 316-318 [147 Cal.Rptr. 740].)

Although some courts are of a contrary view (e.g., *People* v. *Terrill* (1979) 98 Cal.App.3d 291 [159 Cal.Rptr. 360]; *People* v. *Huffman* (1977) 71 Cal.App.3d 63 [139 Cal.Rptr. 264]), we do not read either *Munoz* or *Groce,* on which *Munoz* relied (*People* v. *Munoz, supra,* 41 Cal.App.3d at p. 67), as requiring the trial court to interrogate the attorney in every instance. The *Munoz* court itself has recently rejected such an interpretation of its opinion. (*People* v. *Penrod* (1980) 112 Cal.App.3d 738, 746 [169 Cal.Rptr. 533].) Rather, as the court in *Penrod* stated (112 Cal.App.3d at p. 747): ■ "[I]nquiry into the attorney's state of mind is required only in those situations in which a satisfactory explanation for counsel's conduct or attitude toward his client is necessary in order to determine whether counsel can provide adequate representation."

■ In the case at bench, defendant's complaints about his attorney did not require the court to inquire into counsel's reasons or state of mind. Despite the court's repeated efforts to elicit from defendant specific reasons for his dissatisfaction with counsel, defendant stated only that counsel "hadn't taken any interest" in his trial, that he "didn't want to hear anything" defendant wanted to say, that counsel seemed indifferent to defendant's concern about the absence of Afro-Americans on the jury panel, and that defendant "was lacking in [his] confidence to the competency" of his counsel. Nothing in defendant's statement required the court to make further inquiry to determine whether counsel could provide adequate representation. Counsel's on-the-record concern about defendant's ill-advised decisions to deny the priors and wear jail attire belied defendant's allegation that he was disinterested in defendant's case. With respect to defendant's concern about the jury panel, the trial court specifically noted that counsel had made *in limine* motions in the course of jury selection and that counsel was aware of defendant's right to a properly constituted jury and would insure such a panel if the panel were improper.

As defendant concedes, the trial court fully satisfied *Marsden.* Under the circumstances, it was not required to do more. (*People* v. *Carr* (1972) 8 Cal.3d 287, 299 [104 Cal.Rptr. 705, 502 P.2d 513]; *People* v. *Penrod, supra,* 112 Cal.App.3d 738, 748; *People* v. *Maese* (1980) 105 Cal.App.3d 710, 724 [164 Cal.Rptr. 485]; *People* v. *Culton* (1979) 92 Cal.App.3d 113, 116 [154 Cal.Rptr. 672]; *People* v. *Earl* (1973) 29 Cal.App.3d 894, 901 [105 Cal.Rptr. 831]; *People* v. *Jacobs* (1972) 27 Cal.App.3d 246, 262 [103 Cal.Rptr. 536].)

Having determined that the trial court's inquiry was sufficient, we now consider whether the court abused its discretion in denying defendant's motion. We conclude that it did not.

In *People* v. *Marsden, supra,* 2 Cal.3d 118, 123, the court recognized that "'[a] defendant's right to a court-appointed counsel does not include the right to *require* the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused....'" (Italics added.) ▪ Nothing in defendant's stated reasons or the record before this court indicates that defendant was inadequately represented. To the contrary, the record reveals a conscientious and able attorney determined to provide defendant with the best possible defense, despite defendant's refusal to heed counsel's advice regarding defendant's courtroom attire and denial of the three priors. The trial judge was aware of counsel's advice to defendant, had observed counsel in this and previous cases and considered him an extremely competent attorney. Defendant's refusal to accede to counsel's tactical decisions by itself was not sufficient cause to require substitution of counsel (*People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Terrill, supra,* 98 Cal.App.3d 291, 302), nor in the circumstances did it signify a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's right to effective assistance of counsel (cf. *People* v. *Williams, supra,* 2 Cal.3d 894; *People* v. *Robles, supra,* 2 Cal.3d 205; *People* v. *Terrill, supra,* at pp. 301-302). That there was not such a breakdown in the attorney-client relationship is evidenced by the facts that defendant ultimately followed counsel's advice regarding his courtroom attire, counsel acquiesced in defendant's ill-advised decision to deny the priors (a decision that resulted in defendant's acknowledgment before the jury on cross-examination that he had suffered the priors), and counsel did not join in defendant's motion for substitution (cf. *People* v. *Terrill, supra,* at

p. 301. See also *People* v. *Jacobs, supra*, 27 Cal.App.3d at p. 263 [defendant did not join in counsel's request to withdraw]).

Under the circumstances, it was not an abuse of discretion for the trial court to deny the motion to dismiss counsel. The judgment is affirmed.