Filed 1/18/23  P. v. Duran CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080916 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI20001761) |
| ERIC DURAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, John P. Vander Feer, Judge.  Judgment of conviction affirmed; sentence vacated and remanded for resentencing.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, A. Natasha Cortina, and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted Eric Duran of attempted murder (Pen. Code,[1] §§ 664/187, subd. (a); count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). The jury found true an allegation that Duran used a deadly weapon during the commission of count 1 (§ 12022, subd. (b)(1)). The jury found not true an allegation that count 1 was premeditated (§ 664, subd. (a)) and an allegation that Duran personally inflicted great bodily injury during the commission of counts 1 and 2 (§ 12022.7, subd. (a)). In a bifurcated trial, the court found not true an allegation that Duran had a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12). The court sentenced Duran to a total term of 10 years, consisting of the upper term of 9 years for count 1, plus one year for the deadly weapon allegation.

On appeal, Duran contends his conviction for attempted murder is not supported by substantial evidence. Duran further contends the trial court deprived him of his Sixth Amendment rights during a *Marsden*[2] hearing by failing to inquire into aspects of defense counsel's decisions. Finally, Duran contends remand for resentencing is warranted pursuant to Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) and Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518). We agree Duran is entitled to resentencing and remand for that purpose, but otherwise affirm the judgment.

---

[1]    All further unspecified statutory references are to the Penal Code.

[2]    *People v. Marsden* (1970) 2 Cal.3d 118.

2

FACTUAL AND PROCEDURAL BACKGROUND

On February 20, 2020, Mario Villar, his brother, Eddie Ramirez, and his sister-in-law, Anastacia Baca, stopped for gas at a gas station in Victorville. Villar and Ramirez walked towards the entrance of the gas station and discussed Ramirez's upcoming wedding. Villar told Ramirez "we're going to get this," in reference to Ramirez's wedding-related activities.

Duran walked by Villar and Ramirez during their conversation and asked "Get what? What are you going to get?" According to Ramirez, it seemed as though Duran believed they were talking about Duran's girlfriend or wife. Neither Villar or Ramirez had previously met Duran or his wife. Villar responded to Duran, "I'm having a conversation with my brother" and "we're not talking to you." Duran stated, "You're not going to get her. You're not going to take the mother."

Duran then approached Villar with a four-to-six-inch knife, reached over Villar's shoulder, and "sliced" Villar's neck.[3] Villar started "freaking out" and said, "you really stabbed me." Duran remained in a fighting stance and continued to jab the knife towards Villar's and Ramirez's face and stomach areas. Villa ran towards Duran, who got into his car and drove away with a female passenger. As Duran's drove away, Villar threw a squeegee at the car.

After Duran left the scene, there was "blood all over, down [Villa's] shirt, down to his neck area." Villa was in "a lot of pain" and he estimated his pain was a seven or eight on a scale of ten. Paramedics arrived and treated a 45-millimeter laceration on the right side of Villar's neck. Villar

---

[3] At trial, the prosecution admitted into evidence video surveillance of the incident as well as photographs of Villar's injuries. We received these exhibits as part of the record on appeal and have reviewed them in deciding this appeal.

then went to the emergency room where he received a shot and a bandage that stayed on his neck for around two days. The laceration left a small scar on Villar's neck.

Duran was arrested the following day and gave a postarrest statement that was admitted into evidence and played for the jury. Duran asserted that Villar and Ramirez approached him at the gas station and said "we're gonna take her home to your mother." Duran believed the two men were talking about his girlfriend and that they were going to attack him. Duran acknowledged that he put his knife to Villar's neck, stating, "When I pulled my knife out, I put it to his neck and I guess he moved or whatever." Duran stated he did not intend to cut Duran and asserted that he wielded the knife in order to protect himself.

The jury found Duran guilty of counts 1 and 2, and, thereafter, the court conducted a bifurcated court trial on the issue of whether Duran suffered a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12). The People submitted into evidence a certified record of conviction that demonstrated Duran was convicted of robbery in 1997 in Maricopa County, Arizona. The court concluded that the elements of Duran's robbery conviction from Arizona were not equivalent to the elements of robbery in California, and, therefore, found the allegations related Duran's prior conviction to be not true.

At sentencing, the court imposed the upper term of nine years on count 1, and a consecutive one-year term for the great bodily injury allegation. The court imposed a consecutive one-year term on count 2, but it stayed sentence under section 654. The court relied on four aggravating circumstances at sentencing, including allegations that (1) the crime involved great violence and a threat of great bodily harm, (2) Duran's conduct posed a serious danger

4

to society, (3) Duran sustained prior convictions that appeared to be increasing in seriousness, and (4) Duran served a prior prison term. In imposing an aggravated term, the court commented, "the factors in aggravation so greatly outweigh the factors in mitigation, that the [c]ourt finds the appropriate term to be the aggravated term . . . ."

Duran filed a timely notice of appeal.

DISCUSSION

I.       *Sufficiency of Evidence of Attempted Murder*

Duran contends his conviction for attempted murder is not supported by substantial evidence because there was insufficient evidence of his intent to kill. In support of his contention, Duran argues that Villar's and Ramirez's behavior during the offense demonstrated they did not subjectively believe Duran acted with the intent to kill. He further argues the location of Villar's injury—Villar's neck—does not support a conclusion that Duran acted with the intent to kill. Finally, Duran argues the weapon and limited force used during the offense do not support a conclusion Duran acted with the intent to kill. We disagree with these contentions and conclude there is substantial evidence to support the judgment.

In reviewing the sufficiency of the evidence to support a conviction, we must determine " 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' [Citations.]" (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13.) This standard is deferential, and, as such, we must "review the whole record in the light most favorable to the judgment . . . ." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) We " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] We must also 'accept

5

logical inferences that the jury might have drawn from the circumstantial evidence.' [Citation.]" (*People v. Flores* (2020) 9 Cal.5th 371, 411.)

"To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citation.]" (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) Because "[d]irect evidence of intent to kill is rare . . . ordinarily the intent must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*Ibid.*) Circumstances relevant to the determination of intent to kill include the conduct of the defendant prior to the attack, the nature of the weapon used, the manner of the attack, and the seriousness of the injury. (See *People v. Lashley* (1991) 1 Cal.App.4th 938, 945–946.) In evaluating this evidence, "our sole function is to determine if *any* rational trier of fact could have found the essential elements of the crime [of attempted murder] beyond a reasonable doubt." (*Id.* at p. 946.)

Although this was a close case, viewing the evidence in a light most favorable to the judgment, as we must, we conclude there was sufficient evidence to support Duran's conviction for attempted murder. Duran's conduct prior to and during the attack support an inference he harbored the intent to kill. The evidence showed that Duran engaged with Villa and Ramirez for the purpose of confrontation. In his postarrest statement, Duran admitted he spoke to Villa and Ramirez because he believed they were talking about his girlfriend. Ramirez and Villa also testified Duran mistakenly believed they were discussing Duran's girlfriend or wife, which prompted the confrontation.

The nature of the weapon and the manner with which it was used also support an inference that Duran acted with the intent to kill. The jury found

6

true an allegation that Duran's weapon—a four-to-six-inch knife—was a dangerous or deadly weapon. This allegation necessarily included a finding that the knife was inherently deadly or dangerous, or used in such a way that it was capable of causing and likely to cause death or great bodily injury. (§ 12022, subd. (b)(1); CALCRIM No. 3145.) Duran admitted he intentionally put this dangerous weapon to Villa's neck, a particularly vulnerable part of Villa's body. After Duran sliced Villa's neck, he continued his attack by swinging the knife towards Villar's and Ramirez's face and stomach areas. Thus, contrary to his argument, Duran's use of this dangerous weapon in a manner that injured Villa's neck is indicative of his deadly intent.

That Villa's injury was ultimately not life-threatening does not prove that Duran did not harbor the intent to kill. (See *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1552 ["[t]he fact that [appellant's attack] missed [the victim's] heart and lungs was fortuitous rather than indicative of the absence of an intent to kill."].) Following the slice to Villa's neck, Villa bled onto his neck, hands, and shirt, and went to the hospital to receive treatment. While Duran claimed he did not intend to cut Villa, his use of a dangerous weapon in a manner that caused such substantial bleeding supports an inference that Duran acted with the intent to kill. The trier of fact was free to reject Duran's claim that he did not intend to cut Villa, and the totality of the evidence supports the conviction for attempted murder.

II. *Denial of Marsden Motion*

A. *Background*

On October 14, 2020, seven months prior to the start of his trial, Duran made a *Marsden* motion to substitute his court-appointed attorney. The court conducted a formal *Marsden* hearing and sought input from Duran and his attorney. Duran complained about a lack of communication, telling the

7

court he had not been able to get ahold of his attorneys in the nine months since his arrest. Duran further claimed that when he asked his attorney for a drug treatment program, his attorney would not talk to him about a program and told Duran, "we're just going to go to trial." Duran mentioned his strike prior conviction and asserted that his attorney had not mentioned "striking [the] strike" even though the prior offense was 26 years old.

In response, defense counsel explained that although he had taken over Duran's case from another attorney and therefore was newer to the case, he had met with Duran multiple times. Defense counsel also explained that Duran's trial had been continued in order to accommodate requests by Duran. Defense counsel proffered that Duran's request for drug court and the defense's "counteroffer" had been presented to and rejected by the prosecution.

After hearing from Duran and his attorney, the trial court found there was no irreconcilable difference between Duran and his counsel, or ineffective assistance of counsel, and denied Duran's motion. The court confirmed that Duran had previously requested drug court directly from the court and informed Duran he was ineligible for the program due to the nature of his charges. The court further explained to Duran that delays in his trial were due, in part, to issues related to the Covid-19 pandemic.

B. *Discussion*

On appeal, Duran does not contend that he made a sufficient showing in the trial court that he was entitled to substitute counsel. Rather, he contends the trial court failed to inquire into the adequacy of defense counsel's representation. Specifically, Duran contends the trial court erred by not making an inquiry into defense counsel's reasons for failing to: (1)

8

move for pretrial diversion under section 1001.36; and (2) challenge Duran's strike prior.

Duran argues the court's failure to inquire into these matters constitutes an abuse of discretion because "[t]he court could not exercise informed discretion without making these basic inquiries." Duran contends "it is impossible to determine that Duran was not prejudiced" by the court's purported errors because, had counsel investigated and "eliminat[ed]" Duran's strike prior, the prosecution would have likely offered Duran a more "attractive plea offer." These contentions are not supported by the record and we find no error in the scope and sufficiency of the *Marsden* hearing.

A defendant may request a change in appointed counsel under *Marsden* on the grounds the attorney is not providing adequate representation or the " 'defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' [Citation.]" (*People v. Memro* (1995) 11 Cal.4th 786, 857.) " '[A]t any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated, pursuant to [the] holding in *Marsden*, to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney. [Citations.]' " (*In re M.P.* (2013) 217 Cal.App.4th 441, 456.) "[S]ubstitute counsel should be appointed when, and only when . . . the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel . . . ." (*People v. Smith* (1993) 6 Cal.4th 684, 696.) We review a trial court's decision not to discharge appointed counsel for abuse of discretion. (*People v. Cole* (2004) 33 Cal.4th 1158, 1190.)

Duran cites to *People v. Groce* (1971) 18 Cal.App.3d 292 (*Groce*), in support of his contention that the trial court had an obligation to conduct a

9

further inquiry into Duran's complaints against his attorney. In *Groce,* the victim testified she received stitches at a hospital after she was assaulted by the defendant. (*Groce,* at p. 296.) During the trial, the defendant asserted that the victim was never assaulted and complained to the court that his defense counsel didn't "want to bring up the doctor's report" that would have called into question the victim's testimony. (*Id.* at p. 295.) The trial court denied the defendant's motion for substitute counsel without making *any* inquiry of defense counsel, relying solely on its observations of defense counsel's performance during the trial. (*Id.* at pp. 295–296.)

The *Groce* court reversed on the ground that the defendant had made allegations of "specific important instances of alleged inadequacy of his representation, i.e., the existence or nonexistence of stab wounds and other pertinent evidence that could have been established by hospital records," and that the trial court erred by failing to inquire "into counsel's reason for not producing the physician or his hospital records." (*Groce, supra,* 18 Cal.App.3d at pp. 296–297.) The court further explained that the purpose of trial court's inquiry should not be to ascertain defense counsel's reasons for not following the defendant's requests, but, rather, to determine whether the attorney made a "knowledgeable election on the subject." (*Id.* at p. 296.)

As a preliminary matter, we note it is unclear whether our Supreme Court agrees that the duty to inquire described in *Groce* exists. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1095 [observing that the duty to inquire articulated in *Groce* has been called into question by at least one court].) But, assuming such a duty does exist, it was not violated in this case. In *Groce*, the trial court made "absolutely no effort to inquire into defense counsel's alleged inadequacy" after the defendant made specific allegations relating to hospital records. (*Id.* at p. 1095.) By contrast, here, the trial court conducted

10

a thorough inquiry during a formal *Marsden* hearing and appropriately sought input from both Duran and his attorney.

Duran contends that his comments during the *Marsden* hearing regarding drug treatment, which were general in nature, required the trial court to specifically inquire from defense counsel whether they had sought pretrial mental health diversion under section 1001.36.[4] Duran argues the trial court could not determine whether defense counsel was constitutionally effective without this inquiry. We disagree.

In response to Duran's comments expressing a desire for drug treatment, defense counsel proffered they had sought alternative resolutions in the case, including drug court, but these requests had been denied by the prosecution. Duran's comments about his drug use and desire for treatment, and defense counsel's response, did not suggest that Duran met the six requirements for section 1001.36 diversion. Nor did his comments impose upon the trial court a duty to inquire whether defense counsel considered pursuing this program. The trial court was under no obligation to inquire from defense counsel what speculatively available programs were being sought simply because Duran stated he desired drug treatment.

---

[4] To be eligible for mental health diversion under section 1001.36, "[t]he defendant must make a prima facie showing on the following six eligibility requirements for diversion: (1) defendant suffers from a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM); (2) defendant's mental disorder was a significant factor in committing the charged offense; (3) an opinion from a qualified mental health expert that defendant's symptoms would respond to mental health treatment; (4) defendant consents to diversion and waives the right to a speedy trial; (5) defendant agrees to comply with treatment as a condition of diversion; and (6) defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)(A)–(F).)" (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886, fn. 3.)

Nor is there evidence in the record to support Duran's contention that defense counsel failed to "challenge" his strike prior in such a way that required inquiry by the court. Duran argues that, had defense counsel investigated and discovered favorable case law pertaining to his out-of-state prior strike conviction, "the serious felony prior and prior strike would have been dismissed." However, Duran does not explain what pretrial mechanism defense counsel could have pursued to seek a dismissal of the prior strike conviction before the *Marsden* hearing. The trial court accurately explained that there were limited motions available to be filed at that stage of the criminal proceeding, which was, at that point, seven months prior to the start of trial. Notably, defense counsel *did* successfully challenge the strike prior, as evidenced by the contested trial in which the court found the allegation to be not true.

Duran's comments regarding his strike prior were related to a purported lack of communication with his attorney, and the trial court adequately addressed this issue during the *Marsden* hearing. Duran submits pure speculation as to the offer the prosecution would have made had defense counsel presented favorable case law related to his strike prior conviction to the prosecution. There is no evidence in the record regarding what offers had been made by the prosecution and whether the prior conviction factored in such an offer.

In sum, the trial court did not err by failing to make specific inquiries of defense counsel's tactical decisions relating to the pursuit of a particular diversion program, or the legal sufficiency of the strike prior. The trial court acquired adequate information from Duran and his counsel to exercise informed discretion, and the court did not abuse its discretion in denying

Duran's motion. Having found no error, we need not reach the question of prejudice.

### III. *Remand For Resentencing is Appropriate*

#### A. *Senate Bill 567*

At the time of Duran's sentencing, section 1170, former subdivision (b), left it to the sentencing court's "sound discretion" to select the appropriate term within a sentencing triad that "best serves the interests of justice." (§ 1170, former subd. (b).) During the pendency of this appeal, the Legislature enacted Senate Bill 567 (Stats. 2021, ch. 731, § 1.3), which mandates that a sentencing court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term . . . ." and such circumstances have either been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or the judge in a court trial. (§ 1170, subds. (b)(1)-(2).)

The parties correctly agree that amendments to section 1170 made by Senate Bill 567 apply retroactively to Duran's case because the case was not final on appeal before the enactments became effective on January 1, 2022. (*In re Estrada* (1965) 63 Cal.2d 740, 742 [when the Legislature lessens the penalty for a crime, an inference arises that it intended the lighter penalty to apply provided the judgment is not final]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 [Senate Bill 567 applies retroactively to nonfinal

cases on direct appeal].) The parties disagree, however, as to whether remand is required in Duran's case.[5]

The Attorney General contends remand is not required because the evidence established, beyond a reasonable doubt, that Duran sustained a prior criminal conviction.[6] Because the trial court may consider prior convictions under section 1170, subdivision (b)(3), without submitting the matter to a jury, they contend the court did not err when it relied on this factor. The Attorney General further argues there is no reasonable probability that Duran's jury would have failed to find the remaining aggravating factors true, and, thus, Duran cannot demonstrate prejudice relating to his aggravated sentence. Finally, the Attorney General argues that, assuming a sentencing error did occur, any such error was harmless because the trial court expressed its intent to impose the maximum sentence and would not have sentenced Duran to anything less than the term it imposed.

Duran acknowledges his prior conviction for robbery was proved by a certified record of conviction in accordance with section 1170, subdivision

---

[5] We requested that the parties submit supplemental briefing addressing the effect, if any, of *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*), *People v. Dunn* (2022) 81 Cal.App.5th 394, review granted Oct. 12, 2022, S275655, and *People v. Zabelle* (2022) 80 Cal.App.5th 1098, to the resentencing issue presented in this matter. We received letter briefs from the parties and have reviewed their arguments in deciding this appeal.

[6] In the respondent's brief, the Attorney General relies on *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*), in support of their argument. However, this court disagreed with *Flores* in *Lopez* (2022) 78 Cal.App.5th at p. 466, fn. 11, and articulated a two-part standard in determining harmlessness. Accordingly, we decline to apply the standard of harmlessness articulated in *Flores* and analyze the resentencing issue under the standards of harmlessness discussed further in this opinion.

14

(b)(3). Thus, he does not dispute that the court permissibly relied on this factor in imposing his sentence. However, he contends that the remaining factors relied upon by the court were not proven to the requisite degree of certainty articulated in *People v. Watson* (1956) 46 Cal.2d 818. He further argues the record does not establish that the court would have imposed the same aggravated sentence had it relied solely on Duran's prior conviction. We agree and conclude remand is required for resentencing in conformity with recent amendments made to section 1170.

In *Lopez, supra,* 78 Cal.App.5th at p. 466, fn. 10*,* this court concluded "the presence of a single valid aggravating factor is insufficient to permit a reviewing court to affirm a sentence imposed in violation of the revised version of section 1170, subdivision (b)." Rather, sentencing errors under newly amended section 1170 are subject to a harmless error analysis. (*Lopez,* at p. 465.) "[W]here a sentencing factor must be found true by a jury beyond a reasonable doubt and the court fails to submit that factor to the jury, the error in the court's reliance on that fact may be subject to harmless error review as to whether the lack of a finding by the jury was prejudicial . . . ." (*Ibid*.)

*Lopez* established a two-part standard in determining harmlessness: First, "[i]n order to conclude that the trial court's reliance on improper factors that were not found true by a jury[,] ... admitted by [the defendant, or based on certified records of conviction] was not prejudicial, [the reviewing court] would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the

15

defendant or proven to a jury . . . ." (*Lopez, supra,* at pp. 465–466.) If every factor on which the trial court relied was proven beyond a reasonable doubt, the defendant has not suffered prejudice. (*Ibid.*)

If every factor on which the trial court relied was not proven beyond a reasonable doubt, the reviewing court "then consider[s] the second question, which is whether [it] can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836 [(*Watson*)], that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*Lopez, supra,* at p. 467, fn. 11.)

Our sister courts in *People v. Dunn* (2022) 81 Cal.App.5th 394, review granted Oct. 12, 2022, S275655 (*Dunn*), and *People v. Zabelle* (2022) 80 Cal.App.5th 1098 (*Zabelle*), articulated similar, but slightly different, standards in determining harmlessness. In *Dunn*, the court established the following two-part test: "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez,* (2) whether there is a reasonable probability that the trial court would have imposed a sentence

16

other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)."[7] (*Dunn,* at pp. 409–410.)

In *Zabelle,* the court established a similar two-part standard of harmlessness. (*Zabelle, supra,* 80 Cal.App.5th at pp. 1110–1113.) Under the first part of the test, the reviewing court must: (1) identify one aggravating factor relied upon by the trial court that would have been found true by the jury beyond a reasonable doubt; and (2) for the remaining factors, determine whether it is reasonably probable that a jury would have found the remaining aggravating factors true. (*Ibid*.) The reviewing court "must then, with the aggravating facts that survive this review, consider whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Id.* at p. 1112.)

Here, the Attorney General acknowledges the trial court did not rely solely on Duran's prior criminal conviction in imposing an aggravated term. Specifically, they note that the trial court considered the following aggravating factors: (1) Duran's crime involved great violence and threat of great bodily harm; (2) Duran's conduct indicated he was a serious danger to society; (3) Duran's prior conviction as an adult, and the fact his crimes were

---

7    The *Dunn* court further clarified that step (1)(a) is satisfied if the trial court, "relied upon an aggravating circumstance that relied only upon the fact of defendant's prior convictions and a certified record of defendant's convictions was admitted, or defendant admitted the facts underlying an aggravating circumstance." (*Dunn,* at p. 410, fn. 13.) In this case, the prosecution introduced a certified record of Duran's prior conviction during the court trial on Duran's prior strike and prior serious felony conviction, which would satisfy step (1)(a) in the test articulated in *Dunn.*

increasing in seriousness; and (4) Duran had served a prior prison term. None of these factors were submitted to the jury or admitted by Duran, and, aside from the existence of the prior criminal conviction, these factors were not proven beyond a reasonable doubt.

Nor does the record reflect there is a reasonable probability that a jury would have found the remaining aggravating factors, aside from the prior criminal conviction, to be true. The jury found *not true* the allegations that count 1 was premeditated and that Duran personally inflicted great bodily injury during the commission of his offenses. While substantial evidence may support Duran's intent to kill, the record also demonstrates that the altercation between Duran and Villa involved a single cut to Villa's neck and lasted only seconds. These facts, along with the jury's not true findings on the allegations, limit the probability the jury would have found true the aggravating factors relied upon by the trial court, including that Duran used great violence and a threat of great bodily injury, or posed a serious danger to society. Accordingly, since at least some of the factors relied upon by the trial court were not proven as required by section 1170, subdivision (b), under the standards articulated in *Lopez*, *Dunn*, or *Zabelle*, Duran's sentence must be vacated unless the record reflects the trial would have imposed the same sentence had it relied solely on permissible aggravating factors.

We cannot conclude to the degree of certainty required under *Watson* that the trial court would have selected the upper term had it relied on the permissible aggravating factors available to the court. The trial court acknowledged the presence of mitigating factors, including Duran's demonstration of remorse and a recognition of the wrongfulness of his actions. While the trial court found the circumstances in aggravation greatly outweighed the circumstances in mitigation, the trial court could not

18

permissibly rely on most of the aggravating factors it considered—namely the degree of violence and threat of great bodily harm inflicted upon the victim, as well as Duran's dangerousness to society. Consequently, we cannot conclude the error in this case was harmless and we remand for resentencing.

B. *Assembly Bill 518*

At the time of Duran's sentencing, former section 654, subdivision (a) required that a defendant who committed an act punishable by two or more provisions of law be punished under the provision that provided for the longest possible term. (§ 654, former subd. (a).) Effective January 1, 2022, Assembly Bill 518 (Stats. 2021, ch. 441, § 1) amended section 654 to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (§ 654, subd. (a).) Accordingly, under amended section 654, a trial court has the discretion to punish a defendant under any of the offenses for which they were convicted.

Assembly Bill 518 applies retroactively to Duran's case because the case was not final on appeal before the enactment became effective on January 1, 2022. (*People v. Sek* (2022) 74 Cal.App.5th 657, 673 [Assembly Bill 518 applies retroactively to nonfinal cases on direct appeal].) We disagree with the Attorney General's contention that the record clearly establishes remand would be futile because the trial court would have imposed the maximum sentence had it been aware of the full scope of its sentencing discretion. And, having already concluded we must vacate Duran's sentence and remand for resentencing pursuant to Senate Bill 567, the trial court may revisit all of its prior sentencing decisions, including amendments to section 654 made by Assembly Bill 518. Accordingly, remand is also appropriate so the trial court may consider the ameliorative sentencing changes made pursuant to Assembly Bill 518.

19

## DISPOSITION

The sentence is vacated and the matter is remanded to the trial court for resentencing.  In all other respects, the judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.